**STATE of Oklahoma ex rel. OLKAHOMA BAR ASSOCIATION, Complainant,**

v.

**Leonard G. GEB, Respondent.**

**S. B. C. D. No. 2305.**

Supreme Court of Oklahoma.

Feb. 1, 1972.

Paul M. Vassar, Gen. Counsel, Oklahoma Bar Assn., Oklahoma City, for complainant.

O. A. Cargill, Jr., Oklahoma City, for respondent.

WILLIAMS, Justice:

By formal complaint made upon direction of the relator's Board of Governors in August, 1971, respondent was charged with professional misconduct consisting of acts amounting to commingling a client's funds with his own, and of failing to promptly remit funds belonging to the client.

Article IX, Disciplinary Proceedings, of Rules (of the Supreme Court of Oklahoma) Creating and Controlling The Oklahoma Bar Association, in effect at the times involved in this case was of pertinent partial provision as follows:

"ARTICLE IX DISCIPLINARY PROCEEDINGS

"Jurisdiction: This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in this State, and to discipline for cause, any and all members of the Oklahoma Bar Association . . .

"Section 1. All members of the Bar . . . are charged . . . to observe the high standards of professional conduct.

"Section 2. The enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be all-inclusive nor shall the failure to specify any particular act of misconduct be a tolerance thereof by this Court.

"Section 3. The fact that an act is malum prohibitum rather than malum in se shall not constitute, in and of itself, a defense to a charge of misconduct.

\* \* \* \* \* \*

"Section 6. Where money or other property has been entrusted to an attorney for a specific purpose, he must apply it to that purpose. . . .

\* \* \* \* \* \*

"Section 12. Discipline by the Court shall be disbarment, suspension of a respondent from the practice of law until the further order of the Court, private reprimand or the imposition of public

censure. . . . In fixing the degree of discipline to be imposed for misconduct, the Trial Authority and the Court shall [may] consider prior misconduct resulting in discipline . . ."

Section 7 of that Article adopted the Code of Professional Responsibility of the American Bar Association as previously adopted by the American Bar Association and the Oklahoma Bar Association, as it may be modified by this Court, "as the standard of professional conduct of all members of the Association."

The foregoing sections of Article 9 of such Rules appear at pages 187–189 of 41 OBJ (1970)· where the Court's order and such rules occupy pages 179 to 202. They likewise appear at pages 171–173 of 42 OBJ (1971) where the Court's order and such rules occupy pages 163 to 186. The above quoted sections, and portions of sections of the same Article appear in practically identically the same language and under the same Article and Section numbers at pages 1934–1936 of 42 OBJ (1971) where the Court's "Order and Revision of the Rules Creating and Controlling the Oklahoma Bar Association" of July 26, 1971 and such (revised) Rules occupy pages 1926 to 1947, except that in the new (revised) Rules the former Section 12 of Article IX is numbered as Section 10 thereof. See also 5 O.S.1970 Supp.Chap. 1, App. 1 for the former Rules and 5 O.S. 1971 Chap. 1, App. 1 for revised Rules.

The Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association, as adopted by this Court as above stated, Number DR 9–102, Preserving Identity of Funds and Property of a Client, (A) (2) and (B) (3) and (4) provide as follows:

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

\*     \*     ·\*     \*     \*     \*

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

\*     \*     \*     \*     \*     \*

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

Sub-section (b) of Section 16 of Article X. of the (revised) Rules (See 42 O.B.J. 1926–1947, 5 O.S.1971 Chap. 1, App. 1) provides that "The Supreme Court may approve the Trial Authority's findings of fact or make its own independent findings, and impose discipline, dismiss the proceedings or take such other action as it deems appropriate."

Respondent's alleged unprofessional conduct occurred in connection with a workmen's compensation insurance claim settled for the client on April 20, 1971. The day following the settlement, respondent received a draft for the settlement money. Thereafter, on two successive occasions, respondent delivered his personal checks to the client which subsequently were dishonored by the banks upon which drawn. When respondent and his attorney appeared before the Trial Authority, his attorney made an opening statement that the facts and circumstances alleged in the complaint were "substantially true." However, an "affidavit-response" subscribed and

sworn to by respondent was offered, representing various facts for consideration in "mitigation".

In substance, this affidavit-response stated that, after receiving the settlement check, respondent cashed same for the purpose of dividing its proceeds with the client, but that, being unable to see her that afternoon, respondent took the money home for safekeeping until the next morning. Respondent further stated that when he looked for the money at home the next morning it was gone. The affidavit-response inferred that his inability to find the money was due to its having been hidden by a member of his family, and stated that the two personal checks (drawn on different banks) were delivered to the client after he had been unable to retrieve the original settlement money. Explanation for these checks' being dishonored upon presentment consisted of certain representations of fact concerning Federal income tax liens then pending against respondent. In the affidavit-response, respondent further stated that thereafter, on May 17, 1971, he obtained cash in an amount equal to the client's share of the settlement money and delivered it to her, plus an additional $100.00 which he gave her as interest on the delayed payment.

In an apparent plea for leniency, respondent denied any intent to defraud the client, and represented that he was under a doctor's care due to the stress he had undergone from his "domestic problems and economic plights." In support of this plea, respondent was allowed to introduce certain documentary evidence without objection.

In the hearing before the Trial Authority, counsel for relator stated that respondent had offered "to admit [that] the allegations contained in the Complaint filed herein are true" and "to be suspended from the practice of law in the State of Oklahoma for a period of twelve (12) months." The Board of Governors through General Counsel recommended to the Trial Author-

ity "that this matter be disposed of on that basis."

The case was submitted without introduction of any oral testimony. On October 18, 1971, the Trial Authority entered an order of effect recommending that respondent be suspended from the practice of law for a period of twelve months.

Upon the record submitted to this Court, the only question for determination is whether the discipline recommended by the Trial Authority should be approved and effectuated. In determining appropriate discipline for respondent's admitted unprofessional conduct, it is proper, in connection with respondent's evidence also to consider his previous record as to professional conduct. As to this, complainant alleged that on a previous occasion respondent received a private reprimand before the complainant's Board of Governors, for professional misconduct unrelated to the present case. According to complainant's record, this reprimand was issued February 13, 1970, for misconduct consisting of "failure to maintain a respectful attitude towards the courts and a failure to strive at all times to uphold the honor and maintain the dignity of the profession, . . ."

We have carefully examined the evidence which respondent introduced concerning his domestic situation, his and his family's health, and the Federal income tax liens levied against them. It would be difficult to justify a conclusion that because of the mental and emotional stress and strain respondent's physician represents he was undergoing at the time of the professional misconduct directly involved in this case, the disciplinary action recommended by the Trial Authority should be lessened, in view of the fact this instance of professional misconduct occurred barely over a year after a previous reprimand for other professional misconduct.

In our opinion, under the circumstances, a modification of the Trial Authority's recommendation would not be warranted. That recommendation is there-

fore approved and, in accord therewith, respondent is hereby suspended from practicing law in the State of Oklahoma for a period of twelve months, beginning on the date this opinion is promulgated.

It is further ordered that the actual costs of this proceeding, including the cost of the record herein, shall be paid by respondent, Leonard G. Geb.

All the Justices concur.