**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Frank E. HENSLEY, Respondent.**

**SCBD 2532.**

Supreme Court of Oklahoma.

Feb. 8, 1977.

John M. Amick, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Loofbourrow, Loofbourrow & Manske, by Robert H. Loofbourrow, Boise City, for respondent.

HODGES, Chief Justice.

This is a disciplinary proceeding under the rules creating and controlling the Oklahoma Bar Association, 5 O.S.1971, Ch. 1, App. 1, arts. IX, X. On January 9, 1976, the Board of Governors of the Oklahoma Bar Association authorized the filing of a formal complaint against one of its members, Frank E. Hensley, respondent. Donald L. Benson was appointed trial authority, and a hearing was held before him on August 26, 1976. The trial authority made findings of fact determining respondent

had commingled funds, and conclusions of law and recommended disbarment.

■ The only question for determination is whether disbarment recommended by the trial authority should be approved and effectuated. This court is not bound by the findings of the trial authority either as to findings of fact or recommendations of discipline.[1]

Respondent represented Mr. & Mrs. L. L. Rodman in an action brought to recover damages for the wrongful death of their son. The fee was to be one-third of the amount recovered. The Rodmans and the respondent disagreed as to whether the contingent fee was based on the gross amount recovered or on the net recovery. The litigation expenses had not been finally computed or billed to respondent and were approximately $650.00. No finding was made on this point, nor was it necessary for the purpose of this proceeding. After a judgment for $12,017.93 was recovered and a draft from the insurance carrier, payable to both respondent and the Rodmans was received by the respondent, the Rodmans were asked to endorse the draft and release the judgment. This was done on August 4, 1975, and respondent advised the Rodmans that it would be approximately fifteen days before the draft would clear and the proceeds would actually be available for division. The draft was deposited in an account which was labeled a trust account, but which was in fact used by respondent for his own personal and office expenses.

Respondent advised Rodmans on August 30, 1975, that the insurance company was going to appeal and that the draft would not be honored. Meanwhile, respondent had been drawing on the so-called trust account for personal and office expenses, and the level of that account dropped below the amount due the Rodmans on August 16, 1975. From that time until November 14, 1975, when the Rodmans obtained their money, there was never a balance in the account equal to the amount due them.

The Rodmans were finally paid by money loaned to the respondent by a bank in Forgan, Oklahoma. This payment was made only after the Rodmans had learned that there had in fact been no appeal, and had approached judge Merle Lansden, who presided at the trial, for advice.

The Rodmans were told by the respondent from time to time that the insurance company had refused to honor the draft, that a motion for new trial had been filed and that an appeal was pending in order to explain why they could not receive their money at that time. None of these statements were true.

The evidence presented in the case was in some instances disputed, but there is ample credible evidence in the record to support the findings of the trial authority. Taken together, the evidence and the findings based thereon reveal a violation of disciplinary rule 5 O.S.1971, Ch. 1, App. 3, DR9–102(A)(B).[2]

---

1. 5 O.S.1971 Ch. 1, App. 1, art. 10 § 16(b) provides:

   The Supreme Court may approve the Trial Authority's findings of fact or make its own independent findings, and impose discipline, dismiss the proceedings or take such other action as it deems appropriate.

2. The pertinent disciplinary rule, 5 O.S.1971, Ch. 1, App. 3, DR9–102(A)(B) provides in part:

   (A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

   (1) Funds reasonably sufficient to pay bank charges may be deposited therein.

   (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

   (B) A lawyer shall:

   (1) Promptly notify a client of the receipt of his funds, securities, or other properties.

   \*     \*     \*     \*     \*     \*

The rule against commingling of funds was adopted to prevent the loss of clients' money.[3] The Rodmans did receive their funds and respondent testified there were two matters of expense which should have been paid prior to disbursement for which he had not been billed. The only charge against Hensley consists of one count of commingling a client's funds which admittedly is in violation of the rules of the Oklahoma Bar Association. This is the only violation with which respondent has been charged in twenty-five years of active practice, and there is no evidence of any prior reprimand or misconduct.

 In determining appropriate discipline for respondent's admitted unprofessional conduct, it is proper to consider his previous record concerning professional conduct,[4] and we find that the recommendation of the trial authority should be modified in view of respondent's record and past decisions of this Court involving analogous situations.

In *State ex rel Oklahoma Bar Ass'n. v. Geb,* Okl., 494 P.2d 299 (1972) this Court held that the commingling of client's funds and failure to promptly remit funds belonging to the client warranted a twelve-month suspension. In the *Geb* case there was also the additional fact that on a previous occasion respondent had received a private reprimand before the Board of Governors for professional misconduct. In Hensley's case there is no evidence of any such reprimand or prior misconduct.

In *State of Oklahoma ex rel Oklahoma Bar Association v. H. Lee Smith,* Okl., 510 P.2d 936 (1973) respondent, without knowledge, authority or consent of client, settled and received benefit of claim due client for fire insurance loss; signed her signature to check issued to her; cashed such check without client's knowledge and converted the proceeds. Respondent was suspended for two years. In Hensley's case there was no forgery of client's signature nor was there any unauthorized settlement of the matter in litigation.

In view of these precedents, in our opinion, under the circumstances a modification of the trial authority's recommendation is warranted and respondent is hereby suspended from practicing law in the State of Oklahoma for a period of two years beginning on the date this opinion is final.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY, BARNES and SIMMS, JJ., concur.

---

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
State ex rel Oklahoma Bar Association v. Smith, 510 P.2d 936 (Okl.1973); State ex rel Oklahoma Bar Association v. Bruce, 449 P.2d

894 (Okl.1969); *State ex rel Oklahoma Bar Association v. Myers,* 424 P.2d 975 (Okl.1967).

3. *Black v. State Bar,* 57 Cal.2d 219, 18 Cal.Rptr. 518, 368 P.2d 118 (1962).

4. *State ex rel Oklahoma Bar Ass'n v. Geb,* Okl., 494 P.2d 299 (1972).