STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Michael T. BRASWELL, Respondent.

No. SCBD 3063.

Supreme Court of Oklahoma.

May 31, 1983.

Gary A. Rife, Gen. Counsel, Timothy P. Morris, Asst. Gen. Counsel, Okl. Bar Ass'n, Oklahoma City, for complainant.

Barry W. Johnson, Oklahoma City, for respondent.

OPALA, Justice:

In this proceeding against a lawyer for imposition of professional discipline the issues are: [1] Did the evidence establish that respondent's misconduct was intentional in violation of DR 7–101(A)? and [2] Was the recommended sanction of public censure inappropriately lenient? We answer both questions in the negative.

Michael T. Braswell [Braswell], a licensed lawyer, was charged with two counts of misconduct—the latter of which was latter dismissed by the complainant, Oklahoma Bar Association [Bar]. The Professional Responsibility Tribunal [PRT][1] found Braswell guilty on the first count and recommended that he be publicly censured. The Bar prosecutor seeks here a more serious sanction, while Braswell urges that suspension is too severe a penalty. He suggests a public censure as more appropriate for this case.

### COUNT I

Braswell was hired October, 1979 to prosecute the claims of James D. Stephney against the owner of an automobile which, while being driven by the owner's minor

---

1. Rule 4, Rules Governing Disciplinary Pro-    ceedings, 5 O.S.1981, Ch. 1, App. 1–A.

grandson, ran into Stephney's building. The accident occurred in June 1979 and the petition was filed February 16, 1982, after Braswell had been notified by the Bar of Stephney's complaint against him.

Braswell initially made some inquiries to check out the information given him by his client. Since Braswell was also working on some other cases for Stephney which were more pressing, he started on those first. The facts are in dispute as to whether the file relating to the instant case was assigned to a law clerk to be "worked up" or was simply misplaced in the office. In any event, the file eventually wound up in the "dead files" cabinet. Braswell was unaware that the limitations period had run until he received an inquiry about the matter from the Oklahoma Professional Responsibility Commission [Commission]. Although Braswell responded by filing a petition, the claim had already been barred and the action failed.

In its complaint the Bar claimed that Braswell's neglect constituted a violation of DR 1–102(A), DR 6–101 and DR 7–101(A) of the Code of Professional Responsibility [Code].[2] The trial panel recommended disposition by public censure based upon its finding that Braswell had violated the provisions of DR 6–101 and DR 1–102(A)(1). The panel declined to characterize Braswell's dereliction as intentional and in violation of the provisions of DR 7–101(A).

### I.

Braswell's response to the Bar's complaint asserted that a claim against his professional liability insurance afforded the only proper remedy. This is so, he submitted, because the problem had been satisfactorily resolved between him and his

client and the latter no longer desired to pursue the complaint. Attached to his answer was an affidavit from the client verifying that an amicable settlement had been reached.

■ The Bar argues that under Rule 5.5[3] the issue is not moot. That rule provides: "Neither unwillingness nor neglect of the person filing the grievance to sign a grievance, or to prosecute a charge, nor the settlement or compromise of the dispute between the person filing the grievance and the lawyer, or restitution by the lawyer, shall of itself require abatement of the processing of any grievance, and the termination of such processing shall be at the sole discretion of the Commission."

The record does not reveal, nor does Braswell direct our attention to, anything which would indicate that the Commission abused its discretion in refusing to terminate this disciplinary proceeding.

### II.

### VIOLATIONS OF CANONS OF PROFESSIONAL RESPONSIBILITY

■ In lawyer disciplinary proceedings we do not function as a reviewing court but rather exercise our exclusive original jurisdiction. Neither findings of fact nor conclusions of law made by the PRT are binding on this court or carry a presumption of correctness. The ultimate responsibility to impose professional discipline is ours alone.[4]

The Bar contends that Braswell violated the provisions of Canons 1, 6 and 7. Those canons provide in the pertinent disciplinary rules:

Canon 1. *"A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession"*

**2.** 5 O.S.1981, Ch. 1, App. 3.

**3.** Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A.

**4.** *State, ex rel. Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 265–266 [1982]; *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113 [1939]; *Tweedy v. Oklahoma Bar Ass'n,*

Okl., 624 P.2d 1049, 1052 [1981]; *State ex rel. Oklahoma Bar Ass'n v. Hensley,* Okl., 560 P.2d 567, 568 [1977]; *State ex rel. Oklahoma Bar Ass'n v. Foster,* Okl., 454 P.2d 654, 656 [1969]; *State ex rel. Oklahoma Bar Ass'n v. Brandon,* Okl., 450 P.2d 824, 827 [1969].

DR 1–102(A)(1) and (6)

"(A) A lawyer shall not: * * * (1) Violate a Disciplinary Rule. * * * (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Canon 6. *"A Lawyer Should Represent a Client Competently"*

DR 6–101(A)(3)

"(A) A lawyer shall not: * * * (3) Neglect a legal matter entrusted to him."

Canon 7. *"A Lawyer Should Represent a Client Zealously Within the Bounds of the Law"*

DR7–101(A)(1), (2) and (3)

"(A) A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). . . . (2) Fail to carry out a contract of employment entered into with a client for professional services . . . (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B). * * * "

Braswell admits that his neglect of a client's legal matter—by failing to monitor more closely the status of the case—in violation of DR 1–102(A)(1) and DR 6–101 is clearly .established by the evidence. He submits that the record evinces neither a wilful disregard of duty nor some act of deceit or dishonesty.

The Bar contends that allowing the statute of limitations to run constitutes gross negligence on Braswell's part. It further argues that his conduct was so grossly negligent and in such reckless disregard of the rights of the client as to be deemd the "equivalent of intent" within the meaning of Canon 7.[5]

When questioned about the methods he employed in keeping track of his caseload, Braswell testified that he utilized two different internal calendar systems to monitor active cases. The triggering device on his master control system becomes activated by court-related activity in the case. When this would occur, Braswell would record the events on an activity sheet and then give it to his secretary to be entered on the master docket and on his own pocket calendar. Braswell also used a tickler system which was triggered when a pleading, brief or some other paperwork was due in the case. He explained that all new cases are entered on master cards which he checks at the end of the year to determine the status of each of his cases. This procedure usually takes around two months. In cases yet to be filed he kept track of the limitations period by making notes and relying on his memory. Although the Stephney case had a master card on file, it was not entered on the other two docketing systems because there had been no court activity in it and it was still allegedly being "worked up" by a person on the staff.

■ Braswell intimates that losing track of the case may have been occasioned by the inaction or neglect of his law clerk. This point is in dispute. While delegation of a task entrusted to a lawyer is not improper, it is the lawyer who must maintain a direct relationship with his client, supervise the work that is delegated and exercise complete, though indirect, professional control over the work product. The work of

---

**5.** The Bar directs our attention to cases from other jurisdictions on this point. *Selznick v. The State Bar of California,* 16 Cal.3d 704, 129 Cal.Rptr. 108, 547 P.2d 1388, 1390 [Cal.1976]; *Finch v. State Bar of California,* 28 Cal.3d 659, 170 Cal.Rptr. 629, 621 P.2d 253 [Cal.1981]; *McMorris v. State Bar of California,* 29 Cal.3d 96, 171 Cal.Rptr. 829, 623 P.2d 781, 783 [Cal. 1981].

In *Wootan v. Shaw,* Okl., 205 Okl. 283, 237 P.2d 442, 443 [1951], the court held that "gross negligence" sufficient for recovery of exemplary damages must be "such disregard of another's rights, as is deemed equivalent to such [evil] intent." In *Wooten* we held that gross negligence "implies such entire want of care or recklessness of conduct as is the equivalent of 'positive misconduct' or evinces 'a conscious indifference to consequences.' "

lay personnel is done by them as agents of the lawyer employing them. The lawyer must supervise that work and stand responsible for its product.[6]

It is immaterial here whether, at the critical point in time, the Stephney case was under active assignment to the law clerk or had simply been misplaced and lay forgotten. Braswell's office procedures for monitoring unfiled cases were clearly inadequate. Had there been a proper internal tickler system, the problem encountered here could have been averted.

There is ample credible proof to support the material findings of the tribunal on the issue of Braswell's dereliction in his professional duty. The record is plain that he neglected a legal matter entrusted to him in violation of Canons 1 and 6 of the Code.

■ We next pass to consider whether Braswell's failure properly to monitor the case—because of his inadequate internal calendar system—constituted gross negligence that is the legal equivalent of intentional misconduct under Canon 7.

The statutory definition of gross negligence is "want of slight care and diligence." 25 O.S.1981 § 6. Slight care or diligence is "such as persons of ordinary prudence usually exercise about their own affairs of slight importance." 25 O.S.1981 § 4.

It is the Bar's burden to establish the charges by clear and convincing proof.[7] We find the evidence here falls short of meeting the mandated standard. We cannot say that the care was merely slight and that no more than slight diligence was exercised. The totality of proof fails to rise to the legally prescribed level of cogency. Were the case not required to be judged by the clear-and-convincing gauge but, instead, by the common law's less stringent "mere preponderance" test, there would doubtless be enough here to warrant our finding of slight care and diligence.

## III.

## DISCIPLINE

■ This court is the ultimate arbiter of the appropriate sanction to be imposed for professional infraction.[8] While in two seemingly similar cases[9] a 90-day suspension was deemed warranted for neglect of legal business entrusted to the lawyer, this case lacks the aggravating elements found present in the others. There is here *no* evidence that Braswell ever misrepresented anything, that he failed to return the client's calls or that after the matter had been brought to his attention he neglected to check on its status. The record is devoid of any affirmative acts of misconduct. It reveals neither hesitancy to disclose the true facts to the client nor falsehood uttered in giving misleading or incorrect information about the status of the claim in the lawyer's charge.

We have carefully examined the record and find that there is clear and convincing proof of discipline-warranting inaction charged in Count 1. The evidence clearly shows that Braswell did neglect a legal

6. *State v. Barrett,* 207 Kan. 178, 483 P.2d 1106, 1111 [Kan.1971]; Drinker, Legal Ethics, p. 160, footnote 6.

7. Rule 6.12(c), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A, provides:
   "*To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence* and at least two of the members of the Trial Panel must concur in the findings." [Emphasis added].
   Before the adoption of Rule 6.12(c) February 23, 1981 (effective July 1, 1981), the standard was "preponderance of the evidence" as formerly provided in 5 O.S.1981, Ch. 1, App. 1, Art. 7 (part one) § 16(a), Rules Creating and Controlling the Oklahoma Bar Association.

8. Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A, Rule 6.15.

9. *State ex rel. Oklahoma Bar Ass'n v. Denney,* Okl., 617 P.2d 1351 [1980]; *State ex rel. Oklahoma Bar Ass'n v. Robertson,* Okl., 620 P.2d 382 [1980].

matter in violation of DR 1–102(A)(1) and (6) and DR 6–101(A)(3). We cannot say that the record also establishes, by clear and convincing evidence, a violation of DR 7–101(A)(1)–(3). Public censure, to be administered after the publication of this opinion is the appropriate professional discipline to be imposed for the lawyer's dereliction here under consideration. The cost of the transcript and of the proceedings shall be borne by Braswell. It is to be remitted before Braswell is scheduled to appear for censure before this court.

All Justices concur.