STATE of Oklahoma, ex rel., OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

**Don E. GASAWAY, Respondent.**

**SCBD No. 3646.**

Supreme Court of Oklahoma.

April 2, 1991.

As Corrected May 3, 1991.

Rehearing Denied May 6, 1991.

John E. Douglas, Asst. General Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Robert G. Green, Tulsa, for respondent.

KAUGER, Justice.

In this disciplinary proceeding, the complainant, Oklahoma Bar Association (Bar Association), alleges two counts of misconduct by the respondent, Don E. Gasaway (Gasaway). The first count relates to the misuse of a client's funds through commingling and misapplication of the monies.[1]

---

1. Rule 1.15, Rules of Professional Conduct, 5 O.S.Supp.1988 Ch. 1, App. 3–A, provides in pertinent part:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

"(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved...."

Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A, provides in pertinent part:

"... (b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

The second count involves the failure of Gasaway to fully and fairly disclose all the relevant facts and circumstances surrounding the grievance.[2] We find that the Bar Association established by clear and convincing evidence that Gasaway commingled and misused client funds, and that he failed to fully and fairly respond to a Bar complaint. This conduct warrants a one-year suspension, imposition of costs in the sum of $4,657.06, and supervision upon reinstatement by a lawyer-certified public accountant to ensure that the rules relating to trust accounts are followed.[3]

## FACTS

Gasaway is a duly licensed attorney and a member of the Oklahoma Bar Association. In an attempt to collect Rubin's client's claim, Gasaway filed suit against the debtor, Anderson All Wheel Drive & Equipment Company of Tulsa (debtor/Anderson All Wheel Drive), in January of 1988. That same month, Rubin's client called to inform him that the debtor wanted

to satisfy the claim by turning over two checks for the full amount owing. The client asked whether he should accept the checks. Rubin spoke with Gasaway on January 15, 1988. Gasaway informed Rubin that he would pick up the checks from the debtor. On January 19th, Gasaway called Rubin to confirm he had the checks and was depositing them. Gasaway deposited the checks to his trust account. Rubin testified that he expected Gasaway to wait approximately fourteen days before remitting to allow the checks to clear.

When Rubin had not received a settlement by February 10th, he called Gasaway and was informed that the check would be mailed that day. The check did not arrive and Gasaway refused to return Rubin's calls. On March 2nd, Gasaway's secretary told Rubin that the check had been mailed the previous day. Rubin finally received two checks drawn on Gasaway's trust account on March 15th—one for $6,454 and one for $22,256.86.[4] In the interim be-

---

"(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment ..."

**2.** Rule 8.1, Rules of Professional Conduct, 5 O.S.Supp.1988 Ch. 1, App. 3–A, provides:
"An applicant for admission to the bar, or a lawyer in connection with a bar application or in connection with a disciplinary matter, shall not:
"(a) knowingly make a false statement of material fact; or
"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."
Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A, provides in pertinent part:
"After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall ... file and serve a copy of the grievance ... upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in

such response shall itself be grounds for discipline ..."

**3.** This result accords with the Bar Association's recommendation that a one-year suspension be imposed with reinstatement conditioned on Gasaway's meeting monthly with a lawyer-certified public accountant to review his trust account records. The lawyer-certified public accountant would then report on whether Gasaway was complying with all trust account regulations. The trial panel recommended a six-month suspension and an identical supervisory scheme. In his proposed findings of fact, Gasaway has requested that no discipline be imposed because: 1) the proceedings are public, and 2) he has been put to the expense of trial. Neither of these factors are acceptable as mitigating factors. Gasaway did file a memorandum with the trial panel on August 10, 1990 stating that he was admitted to practice in 1963; that he has served on numerous state and local committees; and that he has been active in pro bono practice for the local domestic court and University of Tulsa students.

**4.** Rubin testified that one of the checks was in the wrong amount. Gasaway had evidently withheld too much in costs. However, Gasaway remitted the questioned amount immediately once it was pointed out to him. Rubin was not concerned that Gasaway had withheld an excessive fee or that more money should have been remitted.

tween March 2nd and March 15th, Rubin again had been unsuccessful in getting Gasaway to either take his calls when they were made or to return the calls.

Rubin deposited the checks received from Gasaway and was informed by the bank that the check for $22,256.86 had been returned for insufficient funds. Rubin immediately contacted Gasaway and demanded a cashier's check. Gasaway told Rubin that he could not provide him with a cashier's check because he did not have funds to purchase one. He asserted that the check would not clear because another check— *not the one received on behalf of Rubin's client*—had been returned for insufficient funds. Gasaway also told Rubin that he was leaving on vacation. On March 29, 1989, Rubin wrote Gasaway informing him that if he did not immediately receive a certified check or wire transfer of the funds, he would file suit in Oklahoma. Gasaway wired the funds to Rubin on April 18, 1989—eighty-nine days after Rubin's client's check had been deposited in Gasaway's trust account.

On May 1, 1989, Rubin filed a grievance against Gasaway with the Bar Association. When the Bar Association requested a response to the grievance, Gasaway provided them with a copy of a letter he had sent to the General Bar Association[5] indicating that the check to Rubin did not clear his account because a stop payment order had been placed on a check for $14,317.75.[6] However, *Gasaway's bank records and a*

*summary done by a certified public accountant indicate that the balance in Gasaway's trust account dropped below a level necessary to cover the check to Rubin on January 25th,* and that it did not contain sufficient funds to wire transfer the $22,256.86 until four days before the money was wired to Rubin. The records also indicate that even if there had not been a stop payment order placed on the check for $14,317.75, there would have been insufficient funds in Gasaway's trust account to have allowed a check for $22,000 to have been paid. It also appears from Gasaway's bank records and testimony elicited before the trial panel that Gasaway could not have made the payment on April 18th without using money collected on behalf of another client.

A pretrial conference was held on January 24, 1990. Both parties agreed to supply opposing counsel with a witness list before the trial panel's hearing on March 20, 1990. When the proceedings convened, Gasaway objected to the Bar Association's calling of a witness not listed on their witness list. The witness, a certified public accountant, had reviewed Gasaway's trust account records and his bank statements. The trial panel allowed the proceedings to continue. However, when the Bar Association called the accountant, the trial panel continued the proceeding to allow Gasaway to prepare to meet the witness testimony.[7] Testimony from the certified public accountant was received at the hearing on

---

5. Rubin testified that the General Bar Association is an organization of attorneys who are involved in commercial collections. Both Rubin and Gasaway are members of the organization. When Rubin did not receive payment of his client's funds in a timely fashion, he notified the General Bar Association of this fact by letter. Gasaway evidently responded to this complaint. The letter given to the Bar Association is the same letter Gasaway filed with the General Bar. The record does not contain a copy of Gasaway's letter. However, there is testimony in the transcript supporting its contents, and in the proposed stipulations of fact. Although Gasaway objected to some of the stipulations, he did not assert that the facts surrounding the letter to the General Bar were inaccurate.

6. This check was deposited in Gasaway's trust account on February 20, 1989.

7. In his proposed findings of fact and conclusions, Gasaway continued to contend that the testimony of the certified public accountant should not have been received on the ground that he was not listed on the original witness list. Had the trial panel allowed testimony from this witness on March 20th, Gasaway's argument of surprise would be more convincing. However, the continuance of proceedings until June 12, 1990 gave Gasaway ample time to take the accountant's deposition or otherwise prepare to meet his testimony.

June 12, 1990. Gasaway presented no testimony in his defense or to show mitigating circumstances at either of the hearings.

On October 23, 1990, the trial panel issued its report with recommended findings of fact, conclusions of law, and proposed discipline. The trial panel found that Gasaway had commingled client funds with his own and used client monies for purposes other than those authorized. It also found that Gasaway failed to make a full and fair disclosure to the Bar Association concerning the grievance by alleging that the check to Rubin was dishonored because of the issuance of a stop payment order when, in fact, the check would have been returned for insufficient funds even if there had been no stop payment order issued. The trial panel recommended a minimum suspension of six months and supervision by a lawyer-certified public accountant upon re-admission.

On November 20, 1990, the Bar Association filed its brief in support of the trial panel's findings and in opposition to the recommended discipline. The Bar Association contends that the proposed sanctions are too lenient in light of the discipline imposed in other causes with similar fact patterns.[8] The Bar Association recommends a one-year suspension plus supervision of trust accounts upon readmission. On December 10, 1990, Gasaway filed a motion for extension of time to file his answer brief. He was granted an additional fifteen days in which to make his filing. Gasaway did not file a brief in the instant cause and has not filed any additional applications for extensions. He also has not responded to the Bar Association's motion to tax costs filed on January 15, 1991.

THE BAR ASSOCIATION ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT GASAWAY COMMINGLED AND MISUSED CLIENT FUNDS, AND THAT HE FAILED TO FULLY AND FAIRLY RESPOND TO A BAR COMPLAINT. THIS CONDUCT WARRANTS A ONE-YEAR SUSPENSION, IMPOSITION OF COSTS, AND SUPERVISION UPON REINSTATEMENT.

Before we may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[9] In a bar disciplinary proceeding, this court as a licensing court exercises exclusive original jurisdiction. Therefore, while the trial panel's recommendations are

8. In cases involving similar fact patterns, the Court has imposed discipline ranging from a six-month to a two-year suspension. *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Moss,* 794 P.2d 403, 411 (Okla.1990) (Improper use of client's money and failure to preserve another client's money in an identifiable separate account is misconduct warranting two-year suspension.); *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Brown,* 773 P.2d 751, 753 (Okla. 1989) (Falsely endorsing check payable to client, failing to promptly notify client of receipt of funds previously held by court, affirmatively misleading client concerning distribution of funds, and lying under oath during deposition, warrant six-month suspension, where attorney has practiced law for 15 years and has had no other disciplinary actions against him.); *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Lowe,* 640 P.2d 1361, 1363 (Okla.1982) (Neglect of client's needs, misuse of client's money, and fabrications told to a client warrant suspension from practice of law for two years.); *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Kessler,* 573 P.2d 1214-15 (Okla.1978) (Wrongful use of a client's money, not ultimately resulting, however, in a loss of money to the client, warrants an 18-month suspension from the practice of law for an attorney without any prior record of professional reprimand or misconduct.); *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Hensley,* 560 P.2d 567, 569 (Okla.1977) (Commingling of client's funds warrants suspension from practice for two years, in absence of prior reprimand or misconduct.); *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Geb,* 494 P.2d 299, 301-02 (Okla.1972) (Commingling of client's funds and failing to promptly remit funds belonging to client warrant 12-month suspension.).

9. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1-A provides in pertinent part:
"... To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings." *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Braswell,* 663 P.2d 1228, 1232 (Okla.1983).

afforded great weight, it is ultimately this court's responsibility to make the final determination. Our review therefore is *de novo* in considering the record presented as well as the trial panel's disciplinary recommendation.[10] Here, the Bar Association presented evidence that: 1) Gasaway failed to remit a client's funds within a reasonable time—eighty-nine days after the funds were deposited to his trust account; 2) that client funds were misused—not only did Gasaway fail to remit the funds in a timely fashion, he also disbursed those funds from his trust account (the trust account fell below a level which would have allowed remittance the day after the client's proceeds were deposited) without his client's permission and when he finally wired the funds to Rubin he used funds collected for another client—again without permission— to cover the transfer; and 3) that Gasaway failed to fully and fairly disclose the facts surrounding the grievance to the Bar Association—Gasaway supplied the Bar Association with a letter written to another organization which contained material misrepresentations concerning why the remittance to Rubin was tardy. The imposition of discipline is warranted for violation of Rule 1.15 of the Rules of Professional Conduct and Rule 1.4 of the Rules Governing Disciplinary Proceedings relating to the use of client funds.[11] Gasaway is also subject to discipline for his failure to respond to the bar complaint in compliance with Rule 5.2 of the Rules Governing Disciplinary Proceedings and Rule 8.1 of the Rules of Professional Conduct.[12]

The Bar Association's assertion that the discipline recommended by the trial panel of six-months plus supervision is too lenient has support in this Court's jurisprudence.

In *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Lowe*, 640 P.2d 1361, 1363 (Okla.1982), Lowe neglected a client's needs, misused the client's money, and made misrepresentations to the client about how client funds had been handled. In *Lowe*, we imposed a two-year suspension. In *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Kessler*, 573 P.2d 1214–15 (Okla.1978), we held that Kessler's misuse of his client's funds, not resulting in a loss to the client, warranted an eighteen-month suspension. Gasaway's transgressions are very similar to those committed by Low and Kessler. Therefore, a six-month suspension appears inconsistent.

In *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Geb*, 494 P.2d 299, 301–02 (Okla.1972), Geb was suspended for one-year and required to pay costs of the disciplinary action for commingling client funds and failing to remit the funds in a timely fashion. Gasaway's transgressions are substantially similar to those presented in *Geb*. Rubin did not become dissatisfied with Gasaway's performance until he had difficulty in recovering his client's funds. There are no charges that Gasaway performed in anything less than a satisfactory fashion in the collection proceeding. A suspension of one-year with supervision, as suggested by the Bar Association and imposed under similar circumstances in *Geb*, is warranted here.

The Bar Association submitted an application to assess costs of $4,657.06 on January 15, 1991. The costs are itemized and copies of the bills associated with the proceeding are attached to the Bar Association's application. Gasaway has not filed any pleading in response to the application.

**10.** *Oklahoma Bar Ass'n v. Stubblefield,* 766 P.2d 979, 982 (Okla.1988).

**11.** Rule 1.15, Rules of Professional Conduct, 5 O.S.Supp.1988 Ch. 1, App. 3–A, see note 1, supra; Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A, see note 1, supra.

**12.** Rule 8.1, Rules of Professional Conduct, 5 O.S.Supp.1988 Ch. 1, App. 3–A, see note 2, supra;

Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A, see note 2,. supra.

Gasaway did not argue mitigating circumstances before the trial panel nor did he file a brief with this Court setting out any such factors. However, he did set out some factors in a memorandum to the trial panel filed on August 10, 1990, see note 3, supra.

Gasaway is liable for the costs of the disciplinary proceeding.

## CONCLUSION

The Bar Association has established that Gasaway violated the rules relating to the preservation of a client's funds and to the rules governing responses to Bar complaints. Cases involving similar facts resulted in discipline ranging from a six-month to a two-year suspension.[13] The client lost no funds and there was no allegation of neglect. The Bar Association's recommendation that Gasaway be suspended for one-year with supervision upon reinstatement and payment of costs has support under Oklahoma law.

RESPONDENT SUSPENDED; COSTS IMPOSED; SUPERVISION UPON REINSTATEMENT.

LAVENDER, DOOLIN, HARGRAVE and SUMMERS, JJ., concur.

OPALA, C.J., concurs in part and dissents in part: I concur in today's imposition of discipline but recede from the court's application of an unacceptably lenient sanction; I would suspend the respondent from law practice for not less than 18 months.

ALMA WILSON, J., with whom HODGES, V.C.J., joins, concurring in part and dissenting in part: I would impose the six month sanction as recommended by the trial panel.

---

13. *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Moss,* see note 8, supra; *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Brown,* see note 8, supra; *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Lowe,* see note 8, supra; *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Kessler,* see note 8, supra; *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Hensley,* see note 8, supra; *State of Oklahoma, ex rel. Oklahoma Bar Assoc. v. Geb,* see note 8, supra.