**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Paul J. KESSLER, Respondent.**

**OBAD No. 984.**
**SCBD No. 3692.**

Supreme Court of Oklahoma.

July 30, 1991.

Rehearing Denied Oct. 21, 1991.

**464**

Gloria Miller White, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Kenneth R. Nance, Oklahoma City, for respondent.

KAUGER, Justice.

The complainant, Oklahoma Bar Association (Bar Association), alleges that the respondent, Paul J. Kessler (Kessler) commingled client funds and used the money for purposes other than those authorized by the client. The Bar Association also alleges that Kessler misrepresented to the trial court in a writ of assistance proceeding that the money had been used for its intended purpose. However, the trial panel made no findings of fact concerning the misrepresentation to the trial court. We find that the Bar Association established by clear and convincing evidence that Kes-

sler commingled and misused client funds, and that the same evidence supports a finding that he misrepresented the disposition of the client's funds to the trial court. The two-year and one day suspension with the imposition of costs in the sum of $1,790.62 is warranted.

## FACTS

Kessler is a duly licensed attorney and a member of the Oklahoma Bar Association. Kessler represented a client in a foreclosure proceeding initiated by Citizens Bank of Edmond. During the foreclosure, the client negotiated with a vice-president of the bank to lease back the home on which the bank was foreclosing for $800 a month. The client approached Kessler and Kessler agreed to formalize the lease. Both parties testified that the delivery of the check was separate from the foreclosure action. Kessler was simply to check on the agreement being drafted by the bank to determine the commencement of the rental period and to deliver the check. All negotiations were done by the client and the bank. On February 7, 1989, Kessler wrote to the attorney representing the bank asking him to confirm the lease agreement and to notify Kessler concerning the commencement of the rental period.

On May 6, 1989, the client gave Kessler $800 in cash. A receipt was issued by Kessler's secretary. At the bottom of the receipt, she noted that the money was for the June 1989 rent to Citizens Bank. Kessler testified that the money was not deposited into an attorney trust account, but that it was placed in a locked box maintained in Kessler's office.

On June 6, 1989, Kessler sent a letter to the vice-president of the bank enclosing a copy of a letter allegedly sent on May 30, 1989. The May 30th letter purported to transmit check No. 732, dated May 30, 1989, in the amount of $800 drawn on Kessler's personal account. Two officers at the bank testified that when they received the letter dated June 6, they made a diligent search for the May 30th letter and the check—they were never found.

In June, the bank filed a Writ of Assistance in the foreclosure action for the client's removal from the property. Late in

June, Kessler filed an objection to the Writ stating: that a vice-president of the bank had agreed the property would be leased to the client for $800 per month; that Kessler had paid the bank; and that the bank had not returned the money. The client was removed from the property.

Kessler alleges that after the Writ of Assistance was issued, the bank returned his original letter dated May 30, 1989 and the check in a bank envelope without a cover letter to him. Kessler contends that he then tore up the original letter and check. The vice-president of the bank testified that the letter and check were not found but had they been found he would not have returned the original letter to Kessler. Instead, he would have written his own letter referencing the May 30th letter. Kessler maintains that the vice-president's job was in jeopardy because he had bound the bank to a lease agreement which he no longer had the authority to negotiate.

In July, Kessler wrote the client and informed him that he had credited the $800 against outstanding statements owed, and he returned $500 to the client. The testimony is disputed concerning why the $500 was returned to the client. Kessler contends that the client came in after the July letter and stated that he needed the money for payroll and Kessler agreed to write the check. The client contends that it was for a $500 cash bond which was forfeited when Kessler failed to appear for the client in a DUI proceeding. In August, Kessler wrote the client and informed him that because he hadn't paid his attorney fees for past representation, Kessler would no longer represent him. Kessler told the client that he could pick up his file.

Kessler's personal bank statements were introduced into evidence. His checks were in the form of individual checkbooks. Kessler testified that he used different groups of checks because he kept some of the checkbooks at the office, some at his home, one or two in his car, and one in his billfold. The checkbooks contained 25 checks which were numbered sequentially. Check numbers 727, 728, 729, 730 and 731 were all written in chronological order and issued in July, 1989, five weeks after Kessler claimed he wrote check number 732 for the client's rent.

The Bar Association advised Kessler of the complaint on December 14, 1989. No response was received. On December 29, 1989, a second letter was sent to Kessler by certified mail. On January 26, 1990, Kessler filed his response. In that letter, Kessler referenced correspondence allegedly sent on January 18, 1990. The Bar Association has no record of receiving the letter. Kessler included in his correspondence a copy of the January 18th letter. *Kessler maintained as he has throughout this proceeding that he mailed the Bank a check for $800.00, and that when the check was returned, he applied the check towards the client's outstanding bill.*

The hearing for this matter was held on December 4, 1990, and the parties were allowed to file closing arguments with the panel. The Bar Association's closing argument was to be filed on January 4, 1991, Kessler's was to be filed on January 24, 1991, and the Bar's reply by January 29, 1991. The Bar Association filed its closing argument on January 8, 1991, and twenty days later Kessler filed his closing argument on January 28, 1991. No reply brief was filed. The Trial Panel's Report was filed on April 22, 1991, almost ninety days after closing arguments were filed. On June 4, 1991, Kessler filed a motion to dismiss for failure to comply with 5 O.S.1981 Ch. 1, App. 1-A, Rule 6.13.[1] The initial objection filed by the Bar Association stated that an extension had been requested. However, when a diligent search failed to turn up the request for an extension, the Bar Association filed a Corrected Objection to the Motion on July 2, 1991. It stated that an extension had not been requested, and that the assertion that an extension

---

1. Title 5 O.S.1981 Ch. 1, App. 1–A, Rule 6.13 provides:

    "Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to wheth-

had been requested was a typographical error.

## I

### THE MOTION TO DISMISS IS DENIED.

■ Kessler asserts that this matter should be dismissed because the Trial Panel failed to file its report within thirty days as required by Rule 6.13. The Trial Panel filed its report eighty days after the hearing had concluded. No extension was requested. This issue was decided in *State ex rel. Oklahoma Bar Assoc. v. Bradley*, 746 P.2d 1130, 1133 (Okla.1987), in which we held that although we do not condone such a delay, such delay in and of itself does not divest this Court of jurisdiction. Here, as in *Bradley*, we disapprove of the delay in filing the report. However, because we do not find that Kessler was prejudiced by this delay, the motion to dismiss is denied.

## II

### THE BAR ASSOCIATION ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT KESSLER COMMINGLED MISUSED CLIENT FUNDS.

### THIS CONDUCT WARRANTS A TWO-YEAR AND ONE DAY SUSPENSION, AND IMPOSITION OF COSTS.

■ Before we may impose discipline upon an attorney, the allegations must be established by clear and convincing evidence.[2] In a bar disciplinary proceeding, this court as a licensing court exerts exclusive original jurisdiction. Accordingly, while the trial panel's recommendations are afforded great weight, it is ultimately this Court's responsibility to make the final determination. Our review is *de novo* in considering the record presented as well as the trial panel's disciplinary recommendation.[3]

■ The Bar Association offered evidence that the client's money was never deposited into a trust account, and that no check was sent from the trust account to the bank for the $800.00. Kessler continues to assert that the check was mailed to the bank. He also contends that a response was sent to the bar. Apparently, neither were ever received. The imposition of discipline is warranted for violation of Rule 1.15 of the Rules of Professional Conduct and Rule 1.4 of the Rules Governing Disciplinary Proceedings relating to the use of client funds.[4]

Kessler has been previously disciplined by this Court. On January 19, 1978, Kessler was suspended for eighteen months for failure to preserve the identity and property of a client. The Bar Association requests that we disbar Kessler. Kessler

---

er the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat. A copy of the Report is concurrently to be served on the General Counsel, the respondent and his attorneys (if any). The thirty (30) day period referred to above may be extended only by the Chief Justice, for good cause shown."

**2.** Title 5 O.S.1981 Ch. 1, App. 1–A, Rule 6.12 provides in pertinent part:

"... To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings." *State ex rel. Oklahoma Bar Assoc. v. Braswell*, 663 P.2d 1228, 1232 (Okla.1983).

**3.** *State ex rel. Oklahoma Bar Assoc. v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988).

**4.** Title 5 O.S.Supp.1988 Ch. 1, App. 3–A, Rule 1.15, provides in pertinent part:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliv-

contends that the relationship of the parties; the amount of money involved; the return of most of the money; and the overall circumstances do not warrant a five year suspension. He admits that he may have technically violated the rules, but the punishment should match the violation. He seeks a one year suspension.

The Trial Panel recommended that he be suspended for five years. In cases involving similar conduct the discipline has extended from six-month suspension to disbarment.[5] In *State ex rel. Oklahoma Bar Assoc. v. Gasaway*, 810 P.2d 826 (Okla. 1991), Gasaway commingled client funds with his own and utilized client monies for purposes other than those approved. He also failed to make a full and fair disclosure to the Bar concerning the grievance.

In *Gasaway*, we imposed a one-year suspension. In *State ex rel. Oklahoma Bar Assoc. v. Moss*, 794 P.2d 403, 411 (Okla. 1990), we held that Moss' improper use of a client's money and failure to preserve another client's money in an identifiable separate account warranted a two year suspension.

In *State ex rel. Oklahoma Bar Assoc. v. Schlegel*, 808 P.2d 670 (Okla.1991), this Court disbarred Schlegel because: he had never maintained an attorney trust account; clients' money was placed in a personal account; he committed fraud upon the court; and he also had a scheme of inflating attorney fees due co-counsel in order to obtain money from a trust of which he was a co-trustee. Kessler's transgressions are very similar to those

---

er to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property...."
Title 5 O.S.Supp.1988 Ch. 1, App. 3–A, Rule 8.4, provides in pertinent part:
"It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; ...
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; ..."
Title 5 O.S.1981 Ch. 1, App. 1–A, Rule 1.4, provides in pertinent part:
" ... (b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.
(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment...."

5. *State ex rel. Oklahoma Bar Assoc. v. Gasaway*, 810 P.2d 826 (Okla.1991) (Commingled client funds with his own and used client monies for purposes other than those authorized; and failed to make a full and fair disclosure to the Bar concerning the grievance warranting a one year suspension); *State ex rel. Oklahoma Bar*

*Assoc. v. Schlegel*, 808 P.2d 670 (Okla.1991) (Conversion of funds; contempt for failure to pay co-counsel his attorney fees; and development of a scheme in which the attorney inflated the fees to obtain money from the trust. This conduct warranted a disbarment.); *State ex rel. Oklahoma Bar Assoc. v. Moss*, 794 P.2d 403, 411 (Okla.1990) (Improper use of client's money and failure to preserve another client's money in an identifiable separate account is misconduct warranting two-year suspension.); *State ex rel. Oklahoma Bar Assoc. v. Brown*, 773 P.2d 751, 753 (Okla.1989) (Falsely endorsing check payable to client, failing to promptly notify client of receipt of funds previously held by court, affirmatively misleading client concerning distribution of funds, and lying under oath during deposition, warrant six-month suspension, where attorney has practiced law for 15 years and has had no other disciplinary actions against him.); *State ex rel. Oklahoma Bar Assoc. v. Lowe*, 640 P.2d 1361, 1363 (Okla.1982) (Neglect of a client's needs, misuse of client's money, and fabrications told to a client warrant suspension from practice of law for two years.); *State ex rel. Oklahoma Bar Assoc. v. Kessler*, 573 P.2d 1214–15 (Okla.1978) (Wrongful use of a client's money, not ultimately resulting, however, in a loss of money to the client, warrants an 18–month suspension. This is the attorney in question in this matter.); *State ex rel. Oklahoma Bar Assoc. v. Hensley*, 560 P.2d 567, 569 (Okla.1977) (Commingling of client's funds warrants suspension from practice for two years, in absence of prior reprimand or misconduct.); *State ex rel. Oklahoma Bar Assoc. v. Geb*, 494 P.2d 299, 301–02 (Okla.1972) (Commingling of client's funds and failing to promptly remit funds belonging to client warrants 12–month suspension.).

committed by Gasaway and Moss rather than Schlegel. However, we must consider the enhancement alleged by the Bar Association because of Kessler's prior discipline.

The Bar urges this Court to follow the discipline imposed in *State ex rel. Oklahoma Bar Assoc. v. McCurtain*, 767 P.2d 427, 429 (Okla.1989). McCurtain was under suspension for neglect of a legal matter, and he had been disciplined three other times, 1981, 1986, and 1987, when another complaint was filed for a neglect of a legal matter. We found that this continued behavior warranted disbarment. However, we are not faced with an attorney who has a current pattern of disciplinary problems. Kessler's previous discipline occurred eleven years ago. In *State ex rel. Oklahoma Bar Assoc. v. Geb*, 494 P.2d 299, 301 (Okla. 1972), this Court found that Geb had been privately reprimanded two years before the current complaint. Geb was suspended for one-year and required to pay costs of the disciplinary action for commingling client funds and failing to remit the funds in a timely fashion.

Upon a *de novo* review of the record, we find that the client was not displeased with Kessler's representation of him in the foreclosure action until Kessler failed to deliver the check to the bank. Kessler returned all but $300.00 of the client's money which he applied to overdue attorney fees. It was only after Kessler wrote his client and told him that he would no longer represent him that the complaint was filed. We find that a two year and one day suspension is more in line with similar cases than the Trial Panel's five year suspension.[6]

The Bar submitted an application to assess costs of $1,790.62 on June 26, 1991. We find that the costs are itemized and are appropriate. Kessler is responsible for the assessment of costs.

RESPONDENT SUSPENDED; COSTS IMPOSED.

LAVENDER, DOOLIN, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

HODGES, Vice Chief Justice, concurring in part and dissenting in part:

I would suspend the respondent for eighteen months.

SIMMS, Justice, concurring in part, dissenting in part.

I concur in the imposition of discipline; I would adopt the recommendation of the Professional Responsibility Tribunal and suspend respondent for a period of five years.

OPALA, C.J., concurs in part, dissents in part and joins in the views expressed by SIMMS, J.

---

6. Title 5 O.S.1981 Ch. 1, App. 1–A, Rule 11.1 provides in pertinent part:
    "A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, ... may be readmitted to the practice of law only through the following procedures:
    (a) The applicant shall file, in triplicate, a petition for reinstatement with the Clerk of the Supreme Court, ..."