STATE of Oklahoma, ex rel., OKLA-HOMA BAR ASSOCIATION, Complainant,

v.

Elaine MEEK, Respondent.

SCBD No. 3970.
OBAD No. 1136.

Supreme Court of Oklahoma.

Oct. 25, 1994.

Rehearing Denied Jan. 23, 1995.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Elaine Meek, pro se.

KAUGER, Justice:

The complainant, Oklahoma Bar Association (Bar Association), alleges two counts of misconduct by the respondent, Elaine Meek (Meek/attorney). In its complaint, the Bar Association alleged mishandling of client funds by commingling and conversion.[1] In its brief in chief, the Bar Association insists that it has proven by clear and convincing evidence that Meek misappropriated client funds.[2] The second count involves misrepresentations made to the Bar Association in relation to the facts and circumstances surrounding the grievance.[3] We find that the

---

1. Rule 1.15, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A provides in pertinent part:

   "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
   (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
   (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
   (d) Trust Accounts. A lawyer or law firm may create and maintain an interest bearing demand trust account and may deposit therein all funds of clients to the extent permitted by applicable banking laws, that are nominal in amount or are on deposit for a short period of time. Maintenance of such trust account balances in noninterest bearing trust accounts will still be permitted...."
   Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:
   "... (b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.
   (c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment...."

2. The Bar Association's Complaint provides in pertinent part:

   "... 8. Respondent's conduct in depositing Ms. Ward's check in her operating account, and failure to pay Mrs. Ward her share of the funds on demand constituted both commingling and conversion of client funds in violation of Rule 1.15, Rules of Professional Conduct, and Rule 1.4, Rules Governing Disciplinary Proceedings...."
   The Bar Association did not argue misappropriation before the trial panel. The facts here do not support a finding of misappropriation through deceit and fraud. See discussion, pp. 698–699, infra.

3. Rule 8.1, Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A provides:

   "An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
   (a) knowingly make a false statement of material fact; or
   (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."
   Rule 8.4, Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A provides in pertinent part:
   "It is professional misconduct for a lawyer to:
   ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation ..."
   Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:
   "After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the

Bar Association established by clear and convincing evidence [4] that: 1) Meek commingled and converted client funds; and 2) she knowingly misrepresented facts surrounding the complaint to the Bar Association. The conduct warrants a one-year suspension and payment of costs in the amount of $1,065.96.[5]

## FACTS

In October of 1992, Martha R. Ward (Ward/client) hired Meek to represent her in a variety of post-divorce proceedings. The instant cause was instituted as a Rule 6 proceeding.[6] It arose out of the distribution of an $1,800.00 check that Meek collected from the client's ex-husband after his attempt to discharge support alimony payments in bankruptcy failed. The facts surrounding the distribution of the check's proceeds are disputed. However, it is clear that on June 9, 1993, the client's ex-husband issued a check made out to "Elaine Meek, Atty. (*And*) Martha R. Ward" for $1,800.00. The check covered back alimony support for the months of October through December of 1992 and March through May of 1993. Meek admits obtaining her client's endorsement and inadvertently depositing the check **in her operating account rather than in a trust account.** After requests from the client for payment of the support alimony, Meek issued a check **from her trust account** for $900.00 on June 28, 1993. The client twice presented the check for payment at the attorney's bank. On both occasions, the

person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action."

4. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"... (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."
*State ex rel. Oklahoma Bar Ass'n v. Farrant*, 867 P.2d 1279, 1281 (Okla.1994); *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, 810 P.2d 826, 830 (Okla.1991); *State ex rel. Oklahoma Bar Ass'n v. Braswell*, 663 P.2d 1228, 1232 (Okla.1983).

5. Rule 6.13, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat. ..."
Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:
"The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court."

6. Rule 6.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"Formal proceedings in matters involving misconduct by lawyers shall be brought by direction of the Professional Responsibility Commission. ..."

check was returned for insufficient funds.[7] On advice of a bank official, Ward left the check as a thirty-day collection item. As of August 30, 1993, when the client filed her complaint with the Bar Association, there had not been sufficient funds in the trust account to cover the $900.00 check. Although the testimony before the Professional Responsibility Tribunal (trial panel) indicates that Meek spent considerable time on Ward's case and was responsive to her client's calls before the check was issued, it also appears that Meek was slow to return client calls once a dispute over the $1,800.00 arose.

No written fee agreement was executed between the client and the attorney. However, when the ex-husband's check was delivered, Ward owed attorney fee's in excess of the amount of the check. Ward and Meek agreed that Meek was to retain a portion of the proceeds for application to the fee bill. They disagree as to the amount. Ward stated in her complaint and to the trial panel that the agreement was for the attorney to retain $500.00. Meek testified that she was to retain half of the proceeds. Although Meek stated that she had advised opposing counsel that she had a lien for attorneys fees and in her answer indicated to the Bar Association that a lien existed, no statutory charging lien was filed.[8] In response to the Bar Association's complaint, the attorney alleged that Ward had agreed for Meek to retain $600.00. Meek explained this discrepancy— between $600.00 and $900.00— to the trial panel on grounds that she thought when she answered the complaint that the check from the ex-husband had been for $1,200.00 rather than $1,800.00. Meek also stated that she

had mailed a $600.00 money order to Ward in August. A copy of the order was admitted as an exhibit before the trial panel. Ward testified that she never received the money order, and Meek admitted that the check was not cashed. Meek indicated that she made no further attempt to reimburse her client because of threats of extortion from Ward. The attorney insists that the client asked for a payment of $2,400.00 in lieu of her filing a complaint with the Bar Association. Meek advised the client to proceed with the complaint.

Meek's bank records, supplied to the Bar Association on request, indicate that when the $1,800.00 check was deposited to the attorney's operating account, the balance in the account was $35.24. Several checks cleared the account after the deposit. These checks were not issued to clients. Rather, they were checks for rent, payroll and other operating expenses. On July 28, the day Meek issued the $900.00 check to Ward from her trust account, there were not sufficient monies on deposit to honor the check. There were sufficient funds in the operating account to cover the check. However, the balance in the operating account had dropped to $46.28 by July 23, 1993, at which time Ward had received no funds from Meek. At no time during June or July of 1993 were there sufficient funds in Meek's trust account to cover a $900.00 check. During that time frame, a number of checks were issued on the trust account which did not relate to client expenses or payments made on behalf of clients. On July 19, 1993, the trust account dropped to an overdraft status.

**7.** Meek told her client that the $900.00 check failed to clear because the original $1,800.00 check "bounced." A review of Meek's bank records indicates this allegation was a fabrication.

**8.** Title 5 O.S.1991 § 6 provides:
"From the commencement of an action, or from the filing of an answer containing a counterclaim, the attorney who represents the party in whose behalf such pleading is filed shall, to the extent hereinafter specified, have a lien upon his client's cause of action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his client's favor; and the proceeds thereof, wher-

ever found, shall be subject to such lien, and no settlement between the parties without the approval of the attorney shall affect or destroy such lien, provided such attorney serves notice upon the defendant or defendants, or proposed defendant or defendants, in which he shall set forth the nature of the lien he claims and the extent thereof; and said lien shall take effect from and after the service of such notice, but such notice shall not be necessary provided such attorney has filed such pleading in a court of record and endorsed thereon his name, together with the words 'Lien claimed.'"

The Bar Association received Meek's response to her client's complaint on October 26, 1993. The response contains several misstatements of fact. The first is that the check from Ward's ex-husband was received in July. The check was actually received in early June. The second is that the check was for $1,200.00 when the correct amount was $1,800.00. The third is that the check from Ward's ex-husband "bounced" when the attorney's bank statements show the check as being honored. The fourth involves a statement that the attorney retained only $600.00 when, in truth, no funds had been disbursed to the client.[9] Meek remitted a check for $600.00 to the Bar Association for payment to her client before the trial panel's hearing. After the conclusion of the proceedings, Meek remitted an additional $300.00 to her client.[10]

On April 22, 1994, the trial panel issued its order with recommended findings of fact, conclusions of law and proposed discipline. It found that: 1) the attorney commingled and converted client funds but did not misappropriate the funds by depriving the client of monies through deceit or fraud; and 2) Meek made misrepresentations to the Bar Association in response to the grievance. The trial panel recommended a one year suspension from the practice of law and imposition of costs.

## I.

## THE ATTORNEY COMMINGLED AND CONVERTED CLIENT FUNDS BUT DID NOT MISAPPROPRIATE THE FUNDS BY DEPRIVING THE CLIENT OF MONIES THROUGH DECEIT OR FRAUD.

■ When the complaint was filed, the Bar Association charged Meek with conversion and commingling. However, in its brief filed before this Court on June 1, 1994, the Bar Association alleges that Meek's conduct constituted misappropriation. The attorney admits commingling and that she had no valid lien on the funds delivered on behalf of her client. Although she recognizes that her conduct warrants discipline, Meek insists that, based on other decisions of this Court, the facts do not support a finding of misappropriation. We agree.

■ Before this Court may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[11] In disciplinary matters, this tribunal exercises exclusive original jurisdiction.[12] Our review is *de novo* in considering the record presented as well as recommendations for discipline.[13] The ultimate decision making authority rests with this Court. Neither the findings of fact of the trial panel nor its

---

9. Even if we assume that Meek mailed the certified check for $600.00 to her client, which the client never received, Meek would have retained $1,200.00 not $600.00 as stated.

10. Meek's brief in chief provides in pertinent part at p. 3:
"... Respondent was advised orally at the bar disciplinary hearing that she was obligated to pay the client the total amount of funds received on behalf of the client, as no valid attorney lien had been perfected in writing. Counsel has paid full reimbursement to the client pursuant to the recommendation of the trial panel, even though the client has failed to comply with the agreed-upon terms of the attorney-client contract...."
However, note in the Bar Association's brief, page 12, providing in pertinent part:
"... Because Respondent's conduct in this case reflects more critically upon her character, and because Respondent has continued to retain client monies which she clearly misappropriated, this Court should require Respon-

dent to return her client's $300.00 immediately, be suspended from the practice of law for a period of two years and one day, and pay the costs of these proceedings...."

11. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Braswell*, see note 4, supra.

12. *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. McMillian*, 770 P.2d 892, 894 (Okla.1989).

13. *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 4 at 1284, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 4 at 830–31, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988).

view of the weight of the evidence or credibility of the witnesses bind us.[14]

Meek is charged with improperly managing client funds in violation of Rule 1.15, Rules of Professional Conduct,[15] and Rule 1.4, Rules Governing Disciplinary Proceedings.[16] This Court has defined three levels of applicable culpability when evaluating the mishandling of client funds: 1) commingling; 2) simple conversion; and 3) misappropriation, i.e., theft by conversion or otherwise.[17] Commingling takes place when client monies are combined with the attorney's personal funds. Pursuant to Rule 1.4(b), conversion occurs when a lawyer applies a client's money to a purpose other than that for which it was entrusted to the attorney. Under the rule, monies or property may be retained if the lawyer has a valid lien for services rendered.[18] The third, and most serious infraction, occurs when funds are misappropriated—there is a theft by conversion or otherwise. This happens when an attorney purposefully deprives a client of money by way of deceit and fraud. Lawyers found guilty of intentionally inflicting grave economic harm through mishandling of client funds are guilty of this offense. A finding that the attorney intentionally committed

such an act requires imposition of the harshest discipline—disbarment.[19]

Meek admits that she commingled client funds when she deposited the check for support alimony in her operating account rather than in her attorney trust account. Although she does not concede that her actions in expending those funds for her own benefit constituted conversion, she does recognize that she had no valid lien on the proceeds.[20] The $1,800.00 check from Ward's ex-husband was delivered to the attorney as payment for past support alimony. It represented what was essentially settlement proceeds from the bankruptcy action in which the ex-husband attempted to discharge the obligation to pay support. When Meek applied those funds to payment of rent, office overhead, etc., she converted funds entrusted to her for the purpose of expunging the support alimony debt. There is clear and convincing evidence[21] that Meek violated Rule 1.4, Rules Governing Disciplinary Proceedings[22] by applying the money toward her claimed fee.

Misappropriation occurs when there is a theft by conversion or otherwise. This happens when an attorney purposefully deprives a client of money by way of deceit and fraud. An attorney found guilty of intentionally in-

---

**14.** *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 4 at 1284, supra.

**15.** Rule 1.15, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, see note 1, supra.

**16.** Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 1, supra.

**17.** *State ex rel. Oklahoma Bar Ass'n v. Cummings,* 863 P.2d 1164, 1172 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Johnston,* 863 P.2d 1136, 1144–45 (Okla.1993).

**18.** Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 1, supra.

**19.** *State ex rel. Oklahoma Bar Ass'n v. Cummings,* see note 17, supra; *State ex rel. Oklahoma Bar Ass'n v. Johnston,* see note 17, supra. Rule 1.4(c), Rules Governing Disciplinary Proceedings, see note 1, supra, requires disbarment for theft of a client's funds by conversion.

**20.** Oklahoma recognizes two types of liens by which an attorney may secure payment for services. Title 5 O.S.1991 § 6, see note 8, supra, is

the statutory charging lien. A § 6 lien may be asserted only when the attorney has commenced an action on behalf of a client or filed an answer containing a counterclaim and endorsed on the pleading a notice of a lien claim. A common law possessory or retaining lien may be asserted against a client's property only when: 1) properly chargeable fees are owing and due; and 2) the lawyer is in possession of property not otherwise designated for a specific purpose. A retention lien is lost when the attorney converts the property or money to his/her own benefit. *State ex rel. Oklahoma Bar Ass'n v. Cummings,* see note 19 at 1170–71, supra.

**21.** Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Braswell,* see note 4, supra.

**22.** Rule 1.4, Rules Governing Disciplinary Proceedings, see note 1, supra.

flicting grave economic harm in mishandling clients' funds is deemed to have committed this most grievous degree of offense.[23] Here, there is evidence that Meek's fee bill exceeded the amount of the $1,800.00 check and that there was an agreement between the parties that the attorney retain at least a portion of the check in satisfaction of fees. There is also no question that the attorney was less than honest with her client about why the original $900.00 check did not clear the bank and that she was slow in remitting funds even she recognized belonged to the client. However, although Ward was certainly in need of these resources, there is no evidence that the client suffered grave economic harm because of the delay in payment.

In a recent case, *State ex rel. Oklahoma Bar Ass'n v. Cummings*, 863 P.2d 1164, 1174 (Okla.1993), the attorney was charged with commingling and conversion of funds by impermissibly taking money entrusted for a specific purpose and applying it toward a claimed fee. In *Cummings*, the attorney retained $500.00 intended to be used as deposition expenses. We concluded that the attorney's decision to apply the monies to a fee bill constituted simple conversion and that evidence of misappropriation did not exist. The Bar Association did not argue misappropriation before the trial panel.[24] We find that the evidence here, as it was in *Cummings*, is insufficient to support a finding of misappropriation.

## II.

### THE ATTORNEY MADE MISREPRESENTATIONS TO THE BAR ASSOCIATION IN RESPONSE TO THE GRIEVANCE.

Meek and the Bar Association do not address the trial panel's finding that the attor-

ney misrepresented facts in response to the grievance. Nevertheless, it is evident that the response contains misstatements of fact in relation to the date that the check was received by the attorney, its amount and its sufficiency. It is also apparent that the attorney did not correctly advise the Bar Association of the amount of funds retained for application towards her fee.[25] These misrepresentations violate Rule 5.2, Rules Governing Disciplinary Proceedings,[26] and Rules 8.1 and 8.4 of the Oklahoma Rules of Professional Conduct.[27] They warrant discipline.

## III.

### UNDER THE FACTS PRESENTED, COMMINGLING AND CONVERSION OF CLIENT FUNDS WARRANTS A ONE–YEAR SUSPENSION AND PAYMENT OF COSTS.

■ The trial panel recommended that Meek be suspended for one year and that she be required to pay costs. Based upon its belief that it had shown the attorney misappropriated her client's funds, the Bar Association recommended a two year and one day suspension, refund of $300.00 to the client, and payment of costs. It appears that the $300.00 has previously been paid to the client.[28]

■ Our responsibility in a disciplinary proceeding is not to punish but to inquire into and to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[29] Discipline is imposed to maintain these goals rather than as pun-

**23.** *State ex rel. Oklahoma Bar Ass'n v. Johnston*, see note 17, supra.

**24.** See discussion, note 2, supra.

**25.** See detailed explanation of misrepresentations, p. 696, supra.

**26.** Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 3, supra.

**27.** Rule 8.1, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, see note 3, supra; Rule 8.4, Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A, see note 3, supra.

**28.** See discussion, p. 697, supra.

**29.** *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 848 P.2d 543, 545 (Okla.1992); *State ex rel. Oklahoma Bar Ass'n v. Colston*, 777 P.2d 920, 925 (Okla.1989); *State ex rel. Oklahoma Bar Ass'n v. Moss*, 682 P.2d 205, 207 (Okla.1983).

ishment for the lawyer's misconduct.[30] When determining discipline for attorney misconduct, the Court compares circumstances with those of previous disciplinary proceedings, examines the attorney's previous record of professional behavior and determines how best to serve the welfare of the public and the integrity of the bar.[31]

We have recently addressed the issues of what discipline is appropriate in cases of commingling and conversion of client funds. In *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 867 P.2d 1279, 1286 (Okla.1994), the attorney applied a check entrusted to him for payment of an investigator's fee to his fee bill. Farrant had previously received a private reprimand for neglect of a legal matter. He was suspended for one year to be followed by a probationary period of one year in which Farrant was required to attend weekly meetings of Alcoholics Anonymous and monthly sessions with a professional counselor. Costs were imposed. In *State ex rel. Oklahoma Bar Ass'n v. Cummings*, 863 P.2d 1164, 1174 (Okla.1993), we were presented facts similar to those found here. Cummings retained $500.00 of a client's monies entrusted for payment of deposition expenses. Cummings had been before this Court on three previous occasions for discipline.

Cummings received a one year suspension and was ordered to pay the costs of the disciplinary proceeding. The attorney in *State ex rel. Oklahoma Bar Ass'n v. Johnston*, 863 P.2d 1136, 1146 (Okla.1993) had not been previously disciplined when found guilty, in a single count, of commingling and conversion of a client's funds, making a false statement to the trial judge, failing to give competent representation, failing to act promptly and failing to communicate with his client. Johnston was suspended from the practice of law for four months and ordered to pay costs.

Because she has not previously appeared before this Court for reprimand, Meek argues that a public reprimand would be sufficient discipline. This suggestion is not supported by *Farrant, Cummings,* or *Johnston.* In other cases involving similar conduct, the discipline has extended from a three-month suspension to disbarment.[32] The facts here are strikingly similar to those found in *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, 810 P.2d 826, 831 (Okla.1991). The evidence in *Gasaway* revealed that: 1) Gasaway failed to remit a client's funds within a reasonable time—here, the client's funds were restored only after disciplinary actions were begun; 2)

**30.** *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 4 at 1286, supra; *State ex rel. Oklahoma Bar Ass'n v. Johnston,* see note 17, supra; *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 642 P.2d 262, 267 (Okla.1982).

**31.** *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Downing,* 804 P.2d 1120, 1123 (Okla. 1990).

**32.** *State ex rel. Oklahoma Bar Ass'n v. Kessler,* 818 P.2d 463 (Okla.1991) (Commingling of client funds, use of client's money for purposes other than those authorized, and misrepresentation to trial court that money had been used for its intended purpose, warrant two-year and one-day suspension.); *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 804 P.2d 434 (Okla.1991) (Attorney's failure to return cash entrusted to him by client upon request and application to attorney fee bill, that would be deemed conversion, warranted three-month suspension.); *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* see note 4, supra (Commingled client funds with his own, used client monies for purposes other than those authorized, and failed to make a full and fair disclosure to the Bar concerning the grievance warranting a

one-year suspension.); *State ex rel. Oklahoma Bar Ass'n v. Schlegel,* 808 P.2d 670 (Okla.1991) (Conversion of funds, contempt for failure to pay co-counsel his attorney fees, and development of a scheme in which the attorney inflated the fees to obtain money from the trust. This conduct warranted a disbarment.); *State ex rel. Oklahoma Bar Ass'n v. Brown,* 773 P.2d 751 (Okla.1989) (Falsely endorsing check payable to client, failing to promptly notify client of receipt of funds previously held by court, affirmatively misleading client concerning distribution of funds, and lying under oath during deposition, warrant six-month suspension, where attorney has practiced law for 15 years and has had no other disciplinary actions against him.); *State ex rel. Oklahoma Bar Ass'n v. Lowe,* 640 P.2d 1361 (Okla.1982) (Neglect of a client's needs, misuse of client's money, and fabrications told to a client warrant suspension from practice of law for two years.); *State ex rel. Oklahoma Bar Ass'n v. Hensley,* 560 P.2d 567 (Okla.1977) (Commingling of client's funds warrants suspension from practice for two years, in absence of prior reprimand or misconduct.); *State ex rel. Oklahoma Bar Ass'n v. Geb,* 494 P.2d 299 (Okla.1972) (Commingling of client's funds and failing to promptly remit funds belonging to client warrants 12–month suspension.).

client funds were misused—here, client funds were deposited into an operating account and were used to pay rent, salaries, etc.; 3) the balance in Gasaway's trust account fell below a level which would have allowed remittance the day after the client's proceeds were deposited—here, the trust account never contained enough money to cover a $900.00 check and the operating account, where the client's money was deposited, fell below an amount to satisfy the debt long before restitution was made; and 4) Gasaway failed to fully and fairly disclose the facts surrounding the grievance to the Bar Association— Meek's response contained misrepresentations concerning the amount of the check received and the existence of a lien for attorneys fees.[33] Here and in *Gasaway,* the client eventually received all funds. Gasaway was suspended for one-year with supervision upon reinstatement and costs were imposed. A one-year suspension, as suggested by the trial panel and imposed under *Gasaway,* is warranted here.[34]

The Bar Association submitted an application to assess costs of $1,065.97 on April 25, 1994. The costs are itemized and copies of the bills associated with the proceeding are attached to the Bar Association's application. Meek has not filed any pleading in response to the application. Meek is responsible for the costs of the disciplinary proceeding.[35]

## CONCLUSION

 The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[36] Upon a *de novo* review of the record, we find that the Bar Association established by clear and convincing evident that: 1) Meek commingled and converted client funds; and 2) she knowingly misrepresented facts surrounding the complaint to the Bar Association. The conduct warrants a one-year suspension and payment of costs in

the amount of $1,065.96. Payment of the costs is to be accomplished within thirty days of the date of this opinion. Prompt payment is a precondition to reinstatement.

### RESPONDENT SUSPENDED; COSTS IMPOSED.

LAVENDER, V.C.J., and HARGRAVE, OPALA and WATT, JJ., concur.

SIMMS, Justice, concurring in part and dissenting in part:

I would suspend respondent attorney for a period of two years and one day.

SUMMERS, Justice, concurring in part and dissenting in part, with whom HODGES, Chief Justice and ALMA WILSON, Justice, join:

I would suspend respondent for six months.

---

33. See discussion, p. 696, supra.

34. Neither the Bar Association nor the trial panel recommended that Meek receive supervision upon reinstatement to ensure that she handle correctly client funds.

35. Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 5, supra.

36. *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 4 at 1287, supra; *Tweedy v. Oklahoma Bar Ass'n,* 624 P.2d 1049, 1052 (Okla.1981).