COMBS, C.J.:
 

 ¶ 1 This is a reciprocal disciplinary proceeding initiated pursuant to Rule 7.7 of the Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S. Supp. 2014, ch. 1, app. 1-A, which provides for discipline in Oklahoma that is based upon a disciplinary action occurring in another jurisdiction. The present matter concerns a Judgment of Disbarment issued February 5, 2018, by the Evidentiary Panel 14-2 of the Grievance Committee for the State Bar of Texas, District 14, in
 
 Commission For Lawyer Discipline v. Shanita Danielle Gaines
 
 , Case No. 201604423. Currently, the Respondent, Shanita Danielle Gaines, is suspended from practicing law in Oklahoma.
 
 State ex rel. Okla. Bar Ass'n v. Gaines
 
 ,
 
 2016 OK 80
 
 ,
 
 378 P.3d 1212
 
 (
 
 Gaines I
 
 );
 
 In the Matter of the
 

 Suspension of Members of the Okla. Bar Ass'n
 
 ,
 
 2018 OK 44
 
 . In addition, just a few weeks prior to our decision in
 
 Gaines I,
 
 she was suspended for failure to comply with continuing legal education requirements.
 
 In the Matter of the
 

 Suspension of Members of the Okla. Bar Ass'n,
 

 2016 OK 64
 
 . The Respondent was granted a hearing before the Professional Responsibility Tribunal ("PRT") on June 20, 2018. Thereafter, the PRT issued a report wherein it recommended Respondent be disbarred effective September 28, 2016 (the alleged date her suspension became final in
 
 Gaines I
 
 ).
 
 [1]
 

 I. PROCEDURAL HISTORY
 

 A.
 
 Gaines I
 

 ¶ 2 The Respondent was licensed to practice law in the State of Texas in 2004 and was admitted to the Oklahoma Bar in 2011. In 2009, the Respondent moved to Oklahoma and continued to practice law in Texas, having not yet been licensed in Oklahoma.
 
 [2]
 
 During that period she hired a Texas resident Jeffrey Gipson as a paralegal. The Respondent met Gipson while the two were studying for the Texas Bar Exam.
 
 [3]
 
 Mr. Gipson had failed to pass the exam and had been performing paralegal work.
 
 [4]
 
 The Respondent's law office was essentially Gipson's home in Texas and she maintained a P.O. Box in which both she and Gipson had access.
 
 [5]
 
 In 2012, the Respondent had difficulty communicating with Gipson. In November 2012, while making a trip to the office, she noticed many boxes with her name on them and legal matters initiated by Gipson without her knowledge.
 
 [6]
 
 She took the boxes and files with her to Oklahoma and spent the next few months reviewing them.
 
 [7]
 
 By March 2013, she contacted Gipson and terminated their working relationship.
 
 [8]
 
 The boxes contained many matters where she was representing persons without her knowledge.
 
 [9]
 
 Some of these unknown clients filed grievances against her.
 
 [10]
 
 Three of these grievances were the subject of
 
 Gaines I
 
 .
 

 ¶ 3 In March 2016, the Respondent appeared before Evidentiary Panel 6-4 of the
 Grievance Committee for the State Bar of Texas, District 6, concerning Case Nos. 201306034, 201306048, and 201306128. The Evidentiary Panel made Findings of Fact and Conclusions of Law concerning the Respondent's professional conduct in the three disciplinary cases. The panel held the Respondent violated Texas Disciplinary Rules of Professional Conduct, Rules 1.01 (b) (1) (competent and diligent representation), 1.03 (a) (communication), 1.14 (b) (safekeeping property), 5.03 (a) (responsibilities regarding nonlawyer assistants), and 5.04 (a) (Professional Independence of a Lawyer).
 
 [11]
 
 The panel imposed upon the Respondent a fully probated suspension of two years. A probated suspension allows the lawyer to practice during the probation as long as they comply with the terms of the probation.
 
 [12]
 
 There were ten terms of probation which included payment of restitution to one of her clients in the amount of $1,566.66 as well as payment of costs to the Texas State Bar in the amount of $1,962.50. The Judgment of Fully Probated Suspension also allowed the Chief Disciplinary Counsel to file a motion to revoke the probation upon information the Respondent violated a term of the judgment. Nothing in the present record indicates such a motion was ever filed.
 

 ¶ 4 At the time of her probated suspension, the Respondent was licensed to practice law in Oklahoma and the Oklahoma Bar Association instigated a reciprocal disciplinary proceeding pursuant to Rule 7.7 RGDP. In April 2016, this Court issued an order directing the Respondent to show cause in writing why a final order of discipline should not be imposed or to request a hearing.
 
 State ex rel. Okla. Bar Ass'n v. Gaines
 
 ,
 
 2016 OK 80
 
 , ¶ 7,
 
 378 P.3d 1212
 
 . The Respondent did not file a response, enter an appearance or request a hearing.
 
 Gaines,
 

 2016 OK 80
 
 at ¶ 7,
 
 378 P.3d 1212
 
 . This Court held "respondent committed an act of commingling and conversion, neglected legal matters, failed to communicate with clients, failed to supervise an employee that resulted in the unauthorized practice of law, and failed to notify the General Counsel of her disciplinary proceeding."
 
 Id.
 
 at ¶ 15. We also noted there was no indication the Respondent had been complying with the terms of her probation by making monthly restitution payments.
 
 Id.
 
 at ¶ 12. An opinion was issued by this Court on June 28, 2016, and Respondent was suspended from the practice of law in Oklahoma for two years and one day.
 
 Id.
 
 This Court denied her petition for rehearing on September 12, 2016, and the case was closed the same day.
 

 B.
 
 Gaines II
 
 (the present matter before this Court)
 

 ¶ 5 On July 28, 2016, one month after this Court issued its opinion in
 
 Gaines I
 
 , Veronica Gallegos filed a grievance with the State Bar of Texas against the Respondent. This grievance was based upon the Respondent's professional misconduct incurred while representing Veronica and her sister Nancy in an automobile accident case.
 

 ¶ 6 On January 26, 2018, the Evidentiary Panel 14-2 of the Grievance Committee for the State Bar of Texas, District 14, held a hearing. The evidence at the hearing revealed in 2010 Jeffrey Gipson approached the Gallegos sisters in a chiropractic office and offered the Respondent's services.
 
 [13]
 
 The Respondent testified she had no knowledge that Gipson had been soliciting her services at that time.
 
 [14]
 
 Thereafter, the sisters hired the Respondent to represent them.
 
 [15]
 
 After her first contact with Gipson, Veronica Gallegos claimed her communications between 2010 and 2013 were always with the Respondent
 and not Gipson.
 
 [16]
 
 Veronica testified she signed a contract with the Respondent for representation but she did not have a copy of the contract; Nancy testified she did not sign a contract.
 
 [17]
 
 The Respondent claimed this type of case would normally have been a contingency fee case but she was unsure because she believed Gipson handled the contract.
 
 [18]
 
 She did not have a copy of the contract due to a "server" crash.
 
 [19]
 

 ¶ 7 After the Respondent terminated her employment of Gipson, she notified Allstate, the insurer in the Gallegos case, that all communications should be made to her and not Gipson.
 
 [20]
 
 This occurred on March 29, 2013. Thereafter, all communications with Allstate were made by the Respondent.
 
 [21]
 
 On April 1, 2013, Allstate wrote two letters to its insured stating it had made offers to settle bodily injury claims for Veronica and Nancy Gallegos.
 
 [22]
 
 On June 7, 2013, the Respondent wrote Allstate to inform the insurer that Veronica had agreed to a settlement.
 
 [23]
 
 On the same day, Allstate wrote the Respondent confirming the acceptance of the offer of settlement for Veronica Gallegos.
 
 [24]
 
 The letter requested a copy of the hospital lien agreement and upon receipt Allstate would issue two checks to the Respondent. On June 14, 2013, the Respondent sent Veronica an email stating she forwarded Veronica's acceptance of the settlement to Allstate and she would need a copy of the creditor's letter regarding a hospital bill.
 
 [25]
 
 Veronica testified that after receiving this email she tried to contact the Respondent but that is when the Respondent "really became M.I.A."
 
 [26]
 
 Two other letters written by Allstate to its insured, dated June 20, 2013, and August 30, 2013, informed the insured that both Veronica and Nancy's claims for bodily injury had been settled.
 
 [27]
 

 ¶ 8 On July 19, 2013, Allstate issued a check to Veronica Gallegos, Shanita Gaines and American Chiropractic Clinic as lienholder.
 
 [28]
 
 The amount was for $8,119.00 and the back of the check was endorsed with the signatures of the Respondent, Shanita Gaines, and the signature of Veronica Gallegos. Another check was issued by Allstate on September 11, 2013, to Nancy Gallegos and Shanita Gaines for the amount of $6,826.00.
 
 [29]
 
 The back of this check was endorsed with the signatures of the Respondent, Shanita Gaines, and the signature of Nancy Gallegos. At the evidentiary hearing, Veronica and Nancy testified they did not endorse either check.
 
 [30]
 
 The Respondent could not recall who endorsed the checks for Veronica or Nancy but admitted she had endorsed both checks with her own name.
 
 [31]
 
 The Respondent testified she believed the money may have been deposited into her operating account rather than her trust account but she could not recall how the money was used.
 
 [32]
 
 She stipulated that she and not Gipson conducted the settlement with Allstate and neither Veronica nor Nancy ever received any money from the
 settlement.
 
 [33]
 
 She further testified she had no explanation why she did not pay the sisters anything from the settlement funds.
 
 [34]
 
 Veronica and Nancy both testified they never knew what happened to their case after they agreed to settle.
 
 [35]
 
 Evidence at the hearing showed Veronica continued attempting to contact the Respondent for almost three years after the settlement to get information on her case.
 
 [36]
 
 After Veronica filed her grievance, the Respondent sent an email to Veronica on November 14, 2016, expressing her desire to pay Veronica monthly "restitution" payments of one hundred dollars ($100.00).
 
 [37]
 
 In the alternative, she suggested Veronica should contact the Texas Bar to see if she could be paid from its Client Security Fund.
 
 [38]
 
 There is no evidence in the record to support the Respondent made any "restitution" payments.
 

 ¶ 9 The Evidentiary Panel 14-2 issued its Judgment of Disbarment on February 5, 2018. In its Findings of Fact it determined: Veronica Gallegos hired the Respondent in 2010, the Respondent failed to promptly comply with reasonable requests for information, failed to deposit settlement funds in a separate trust account, failed to provide a written statement describing the outcome of the personal injury matter as well as remittances to any medical providers, failed to notify medical providers of the settlement, failed to surrender to Gallegos the paper and property she was entitled upon termination of representation, failed to make reasonable efforts to ensure Gipson's conduct was compatible with the professional obligations of the Respondent, and the Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. These actions constituted violations of the following Texas Disciplinary Rules of Professional Conduct: 1.03 (a) 39 (Communication), 1.04 (d) 40 (Fees), 1.14 (a)
 
 [41]
 
 (Holding Funds in a Separate Account), 1.14 (b)
 
 [42]
 
 (Notification of Client Upon Receipt of
 Funds), 1.15 (d)
 
 [43]
 
 (Duties Upon Termination of Representation), 5.03 (a)
 
 [44]
 
 (Supervision Over Non-Lawyers), and 8.04 (a) (3)
 
 [45]
 
 (Dishonesty, Fraud, Deceit or Misrepresentation). The Panel's judgment disbarred the Respondent effective January 26, 2018.
 

 ¶ 10 On March 13, 2018, this Court received the Complainant's Notice of Judgment of Disbarment with the attached certified copy of the judgment. The notice also informed this Court that the Respondent is currently suspended from practicing law in Oklahoma. On April 4, 2018, the Respondent filed a Brief to Mitigate the Severity of Disciplinary Action in which she requested a hearing and asked that no final order of discipline be imposed based upon the Texas Judgment of Disbarment.
 

 ¶ 11 A hearing was held before the Professional Responsibility Tribunal on June 20, 2018. In the PRT's report they found the evidence presented before the Texas Evidentiary Panel established the Respondent settled a personal injury case on behalf of Veronica Gallegos, she received settlement funds but failed to deposit those funds into a separate trust account and never distributed those funds to her clients. The PRT also found that the Respondent did not dispute these facts at the June 20, 2018, hearing. Her testimony as well as her witness's testimony was compelling to support she was remorseful for her misconduct. Former Oklahoma County District Judge Kenneth Watson testified on her behalf. The Respondent worked for Watson for several years performing legal research and writing. Mr. Watson was impressed with her work and had no concern about the Respondent being readmitted to the practice of law in Oklahoma. His testimony also supported the Respondent's remorse for her misconduct. The Complainant's witness, OBA Investigator Krystal Willis, also testified that the Respondent was very cooperative during the investigation and complied with recommendations on how she should conduct her affairs. However, the PRT found the Respondent had no satisfactory explanation regarding the settlement funds she received and she could not dispute that she appeared to have benefited from and used those funds. Her misconduct in this case was found to be the same as in her earlier case where this Court determined "respondent committed an act of commingling and conversion, neglected legal matters, failed to communicate with clients, failed to supervise an employee that resulted in the unauthorized practice of law, ..."
 
 State ex rel. Oklahoma Bar Ass'nv. Gaines
 
 ,
 
 2016 OK 80
 
 , ¶ 15,
 
 378 P.3d 1212
 
 . The PRT recommended the Respondent be disbarred effective September 28, 2016, the date it alleged
 
 Gaines I
 
 became final.
 

 ¶ 12 On August 21, 2018, this Court issued an order setting a briefing schedule. The Complainant timely filed a brief on September 11, 2018, and the Respondent did not file a brief.
 

 II. STANDARD OF REVIEW
 

 ¶ 13 This Court is vested with exclusive and original jurisdiction over attorney disciplinary proceedings.
 
 State ex rel. Okla. Bar Ass'n v. Hart
 
 ,
 
 2014 OK 96
 
 , ¶ 6,
 
 339 P.3d 895
 
 ;
 

 State ex rel. Okla. Bar Ass'n v. Cooley
 
 ,
 
 2013 OK 42
 
 , ¶ 4,
 
 304 P.3d 453
 
 . It is this Court's constitutional responsibility to regulate the practice of law and the licensure, ethics, and discipline of legal practitioners in this state.
 
 State ex rel. Okla. Bar Ass'n v. Wintory,
 

 2015 OK 25
 
 , ¶ 14,
 
 350 P.3d 131
 
 ;
 
 State ex rel. Okla. Bar Ass'n v. Wilcox
 
 ,
 
 2014 OK 1
 
 , ¶ 2,
 
 318 P.3d 1114
 
 ;
 
 State ex rel. Okla. Bar Ass'n v. McArthur
 
 ,
 
 2013 OK 73
 
 , ¶ 4,
 
 318 P.3d 1095
 
 ;
 
 State ex rel. Okla. Bar Ass'n v. Farrant,
 

 1994 OK 13
 
 , ¶ 18,
 
 867 P.2d 1279
 
 . We exercise the responsibility to decide whether attorney misconduct has occurred and what discipline is appropriate, not for the purpose of punishing the attorney, but to assess his or her continued fitness to practice law and to safeguard the interests of the public, the courts, and the legal profession.
 
 State ex rel. Okla. Bar Ass'n v. Friesen
 
 ,
 
 2016 OK 109
 
 , ¶ 8,
 
 384 P.3d 1129
 
 ;
 
 State ex rel. Okla. Bar Ass'n v. Wilburn,
 

 2006 OK 50
 
 , ¶ 3,
 
 142 P.3d 420
 
 . In a reciprocal disciplinary proceeding, "it is within this Court's discretion to visit the same discipline as that imposed in the other jurisdiction or one of greater or lesser severity."
 
 State ex rel. Okla. Bar Ass'n v. Kleinsmith
 
 ,
 
 2013 OK 16
 
 , ¶ 4,
 
 297 P.3d 1248
 
 ;
 
 State of Okla. ex rel. Okla. Bar Ass'n v. Patterson,
 

 2001 OK 51
 
 , ¶ 33,
 
 28 P.3d 551
 
 .
 

 III. ANALYSIS
 

 ¶ 14 Rule 7.7, RGDP allows a lawyer in a reciprocal disciplinary matter to file documentation to support a defense that the discipline imposed by another jurisdiction was not supported by the evidence or that the findings therein did not furnish sufficient grounds for discipline in Oklahoma. The Respondent was served and filed a pre-hearing brief to mitigate the severity of discipline. She made no allegations that the Judgment of Disbarment was not supported by the evidence, nor did she allege the findings therein do not support discipline in Oklahoma. Her pre-hearing brief in support of mitigation only asserts she has not taken any action warranting discipline in Oklahoma since her June 28, 2016, suspension by this Court and she has not engaged in any activity in Oklahoma that would endanger the interest of the public or erode the public confidence in the legal profession. She did not file a response to Complainant's post-hearing brief in support of discipline.
 

 ¶ 15 We have conducted a
 
 de novo
 
 review of the record and find clear and convincing evidence that establishes the Respondent engaged in professional misconduct. Unlike
 
 Gaines I
 
 , it is clear here the Respondent conducted the settlement of the Gallegos sisters' personal injury matter and she received the settlement funds. Initially, she failed to properly supervise her non-lawyer staff person, Gipson, and failed to provide her clients a copy of a written and signed contingency fee agreement. She endorsed the settlement checks herself and cannot recall who endorsed the names of the Gallegos sisters, but she does not dispute the sisters' testimony that they did not endorse the checks nor authorize anyone else to endorse the checks. The funds were deposited into the Respondent's operating account and not her trust account. No funds were delivered to the Gallegos sisters, nor were necessary payments made to all third parties. She settled the Gallegos case and failed to notify her clients and provide them a settlement statement describing the outcome of the case. Over several years the Respondent failed to satisfy the sisters' requests for a status report. At the conclusion of the case she also failed to surrender any papers and property to her clients to which they were entitled. The Complainant's brief alleges the evidence conclusively establishes the Respondent misappropriated her clients' and third parties settlement proceeds. We agree. The Respondent's conduct violated the Oklahoma Rules of Professional Conduct, Rules 1.4 (a) (3) and (4)
 
 [46]
 
 (failure to keep client reasonably informed and promptly comply with reasonable requests for information), 1.5 (c)
 
 [47]
 
 (failure to
 provide client with a copy of a written and signed contingency fee agreement), 1.15 (a)
 
 [48]
 
 (failure to safekeep and hold separately client funds), 1.15 (d)
 
 [49]
 
 (failure to promptly notify and deliver funds to client and interested third parties upon receipt), 1.16 (d)
 
 [50]
 
 (failure to promptly surrender client files and other property upon termination of representation), 5.3 (b)
 
 [51]
 
 (failure to properly supervise nonlawyer assistants), and 8.4 (c)
 
 [52]
 
 (engaging in conduct involving dishonesty, fraud, or deceit),
 
 5 O.S. 2011
 
 , ch. 1, app. 3-A.
 

 ¶ 16 In determining appropriate discipline it is proper to compare the matter at hand with previous disciplinary matters.
 
 State ex rel. Okla. Bar Ass'n v. Doris
 
 ,
 
 1999 OK 94
 
 , ¶ 38,
 
 991 P.2d 1015
 
 . The extent of discipline must, however, be decided on a case-by-case basis because each situation will usually involve different transgressions and different mitigating circumstances.
 
 Doris,
 

 1999 OK 94
 
 at ¶ 38,
 
 991 P.2d 1015
 
 .
 

 ¶ 17 This Court has defined three levels of culpability when evaluating the mishandling of client funds: 1) commingling; 2) simple conversion; and 3) misappropriation, i.e., theft by conversion or otherwise.
 
 State ex rel. Oklahoma Bar Ass'n v. Meek
 
 ,
 
 1994 OK 118
 
 , ¶ 8,
 
 895 P.2d 692
 
 . Misappropriation occurs when an attorney purposefully deprives a client of money by way of deceit and fraud.
 
 Meek
 
 ,
 
 1994 OK 118
 
 at ¶ 8,
 
 895 P.2d 692
 
 . A finding that a lawyer committed such an act requires imposition of the harshest discipline.
 

 Id.
 

 ;
 
 State ex rel. Okla. Bar Ass'n v. Arnold,
 

 2003 OK 31
 
 , ¶ 21,
 
 72 P.3d 10
 
 . At the time
 
 Meek
 
 and
 
 Arnold
 
 were decided, Rule 1.4 (c), Rules Governing Disciplinary Proceedings,
 
 5 O.S. 2001
 
 , ch. 1, app. 1-A, required disbarment for theft by conversion or otherwise of the funds of a client.
 
 [53]
 
 In 2007, that requirement was removed from the rule effective January 1, 2008.
 
 In re: Application of the OBA to Amend the Rules of Professional Conduct,
 

 2007 OK 22
 
 ,
 
 171 P.3d 780
 
 . However, subsequent decisions of this Court still acknowledge disbarment as an appropriate discipline for conversion/misappropriation of a client's funds.
 
 State of Okla. ex rel. Okla. Bar Ass'n v. Kleinsmith,
 

 2018 OK 5
 
 , ¶¶ 11-12,
 
 411 P.3d 365
 
 ;
 
 State ex rel. Okla. Bar Ass'n v. Rymer,
 

 2008 OK 50
 
 , ¶ 5,
 
 187 P.3d 725
 
 .
 

 ¶ 18 The Complainant submitted
 
 State ex rel. Oklahoma Bar Ass'n v. Perkins,
 

 1988 OK 65
 
 ,
 
 757 P.2d 825
 
 , in support of its recommendation for disbarment. In
 
 Perkins
 
 a lawyer failed to maintain a trust account, commingled clients' funds, converted clients' funds to his personal use, and failed to use the funds for their intended purpose. Perkins repaid some of his clients' funds but not all were paid in full.
 
 Perkins,
 

 1988 OK 65
 
 , ¶¶ 8, 10, 12,
 
 757 P.2d 825
 
 . This Court determined the imposition of severe discipline is required in misappropriation cases.
 
 Id.
 
 at ¶ 34. We stated the following:
 

 A practicing lawyer should not need this Court to tell him he can't take a client's money, given to him to be held in trust, and use it for personal expenses or to pay personal loans.
 

 Id.
 
 at ¶ 33.
 

 Perkins was disbarred and his name was stricken from the roll of attorneys.
 
 Id.
 
 at ¶ 35.
 

 ¶ 19 The record reflects the Respondent misappropriated her clients' settlement proceeds. The Complainant has acknowledged mitigating factors including the Respondent's lack of experience, stress of being a solo practitioner, and her remorse for the harm she has caused her clients and to the reputation of the legal profession. Nonetheless, the Complainant recommends the Respondent be disbarred retroactively from the effective date of her suspension in
 
 Gaines I
 
 . Misappropriation of a client's funds warrants the harshest discipline and disbarment is appropriate here. The Respondent is hereby disbarred and her name shall be stricken from the roll of attorneys upon the date this opinion is filed.
 

 ¶ 20 The Complainant filed an Application to Assess Costs against the Respondent in the amount of $1,805.42. Our review of the application indicates it should be granted. The costs of the transcript, investigation, and proceeding shall be borne by the Respondent. The amount of $1,805.42 is to be paid within 30 days upon the date this opinion is filed.
 

 RESPONDENT DISBARRED AND NAME STRICKEN FROM ROLL OF ATTORNEYS UPON THE DATE THIS OPINION IS FILED
 

 ¶ 21 ALL JUSTICES CONCUR
 

 The actual date when
 
 Gaines I
 
 was closed was September 12, 2016.
 

 Tr. at 56-57, State of Oklahoma ex rel., The Oklahoma Bar Association v. Shanita Danielle Gaines (SCBD #6630; June 20, 2018).
 

 Id.
 
 at 57.
 

 Id.
 
 at 55-56.
 

 Id.
 
 at 75-76.
 

 Id.
 
 at 57-58.
 

 Id.
 

 Id.
 

 Id.
 
 at 58-59.
 

 Id.
 
 at 59.
 

 For detailed information on these particular rules see
 
 State ex rel. Okla. Bar Ass'n v. Gaines
 
 ,
 
 2016 OK 80
 
 , ¶ 4 nn. 1-5,
 
 378 P.3d 1212
 
 , 1214-15 nn. 1-5.
 

 State Bar of Texas,
 
 Punishment for Professional Misconduct
 
 , https://www.texasbar.com/Content/NavigationMenu/ForThePublic/ProblemswithanAttorney/GrievanceEthicsInfo1/MisconductPunishment.htm (last visited October 11, 2018).
 

 Complainant's Ex. 9, Tr. at 16 & 33, Commission for Lawyer Discipline v. Shanita Gaines (201604423; January 26, 2018).
 

 Id.
 

 Ex. 9, Tr. at 47.
 

 Id.
 

 Ex. 9, Tr. at 16-17.
 

 Id.
 

 Ex. 9, Tr. at 29-30.
 

 Id.
 

 Ex. 9, Tr. at 17, 39.
 

 Id.
 

 Ex. 9, Tr. at 70.
 

 Id.
 

 Ex. 9, Tr. at 71.
 

 Id.
 

 Ex. 9, Tr. at 54 & Ex. 1B attached to the transcript.
 

 Id.
 

 Complainant's Ex. 1, at CEX 611 &612.
 

 Complainant's Ex. 9, Ex. 1C attached to the transcript.
 

 Complainant's Ex. 1, at CEX 615.
 

 Complainant's Ex. 9, Ex. 4 attached to the transcript.
 

 Complainant's Ex. 9, Tr. at 22, Commission for Lawyer Discipline v. Shanita Gaines (201604423; January 26, 2018).
 

 Complainant's Ex. 1, at CEX 613 & 614.
 

 Complainant's Ex. 9, Ex. 6 attached to the transcript.
 

 Id.
 

 Complainant's Ex. 9, Tr. at 24-26, 36, Commission for Lawyer Discipline v. Shanita Gaines (201604423; January 26, 2018).
 

 Id.
 

 Ex. 9, Tr. at 57, 66.
 

 Id.
 

 Ex. 9, Tr. at 66-67, 69, 72.
 

 Id.
 

 Ex. 9, Tr. at 60, 64, 76.
 

 Id.
 

 Ex. 9, Tr. at 70.
 

 Id.
 

 Ex. 9, Tr. at 20-22, 34-35.
 

 Id.
 

 Ex. 9, Tr. at 22-23 & Ex. 5 attached to the transcript.
 

 Complainant's Ex. 8; Tr. at 65, State of Oklahoma ex rel., The Oklahoma Bar Association v. Shanita Danielle Gaines (SCBD #6630; June 20, 2018).
 

 Id.
 

 V. T. C. A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9 Rule 1.14 (a):
 

 (a) A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property. Such funds shall be kept in a separate account, designated as a "trust" or "escrow" account, maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other client property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
 

 V. T. C. A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9 Rule 1.14 (b):
 

 (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
 

 V. T. C. A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9 Rule 1.15 (d):
 

 (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation.
 

 V. T. C. A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9 Rule 5.03 (a):
 

 (a) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
 

 V. T. C. A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9 Rule 8.04 (a) (3):
 

 (a) A lawyer shall not:
 

 ....
 

 (3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 

 Rule 1.4 (a) (3) and (4), Oklahoma Rules of Professional Conduct,
 
 5 O.S. 2011
 
 , ch. 1, app. 3-A:
 

 (a) A lawyer shall:
 

 ....
 

 (3) keep the client reasonably informed about the status of the matter;
 

 (4) promptly comply with reasonable requests for information; and
 

 Rule 1.5 (c), Oklahoma Rules of Professional Conduct,
 
 5 O.S. 2011
 
 , ch. 1, app. 3-A:
 

 (c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination.
 

 Rule 1.15 (a), Oklahoma Rules of Professional Conduct,
 
 5 O.S. 2011
 
 , ch. 1, app. 3-A:
 

 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
 

 Rule 1.15 (d), Oklahoma Rules of Professional Conduct,
 
 5 O.S. 2011
 
 , ch. 1, app. 3-A:
 

 (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
 

 Rule 1.16 (d), Oklahoma Rules of Professional Conduct,
 
 5 O.S. 2011
 
 , ch. 1, app. 3-A:
 

 (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.
 

 Rule 5.3 (b), Oklahoma Rules of Professional Conduct,
 
 5 O.S. 2011
 
 , ch. 1, app. 3-A:
 

 With respect to a nonlawyer employed or retained by or associated with a lawyer:
 

 ....
 

 (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
 

 Rule 8.4(c), Oklahoma Rules of Professional Conduct,
 
 5 O.S. 2011
 
 , ch. 1, app. 3-A:
 

 It is professional misconduct for a lawyer to:
 

 ....
 

 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 

 1.4 (c), Rules Governing Disciplinary Proceedings,
 
 5 O.S. 2001
 
 , ch. 1, app. 1-A provided:
 

 (c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment.